E-FILED
Wednesday, 05 May, 2010 02:13:29 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TRADESMEN INTERNATIONAL, INC. | ) | CASE NO. |
| Plaintiff, | ) | JUDGE |
| vs. | ) | |
| PROFESSIONAL LABOR SUPPORT, LLC | ) | **COMPLAINT** |
| and | ) | |
| JOHN BLACK | ) | |
| and | ) | |
| TODD WALKER | ) | |
| and | ) | |
| RYAN ELLIS | ) | |
| and | ) | |
| RYAN BOYER | ) | |
| Defendants. | ) | |

Plaintiff, Tradesmen International, Inc. ("Tradesmen"), by its counsel, hereby files the following Complaint against Defendants, Professional Labor Support, LLC ("PLS"), John Black ("Black"), Todd Walker ("Walker"), Ryan Ellis ("Ellis"), and Ryan Boyer ("Boyer").

## INTRODUCTION

1. This is an action for breach of contract, tortious interference with contractual and business relations, violation of the Uniform Trade Secrets Act, violation of covenants not to compete, violation of the employee duty of loyalty, civil conspiracy. Tradesmen's claims arise from the actions of Black, Walker, Ellis and Boyer, who all entered into restrictive covenants as

employees of Tradesmen and in consideration for their employment as managers with the Company. During their employment with Tradesmen and after their employment but during the terms of their restrictive covenants, the Defendants formed a competing entity, Professional Labor Support, LLC ("PLS"), stole trade secrets from Tradesmen, stole other confidential proprietary information from Tradesmen, and solicited customers of Tradesmen and employees of Tradesmen. Defendants have and continue to use these trade secrets to compete with Tradesmen.

**PARTIES**

2. Plaintiff, Tradesmen International Inc. ("Tradesmen"), is an Ohio corporation that has its principal place of business at 9760 Shepard Road, Macedonia, Ohio 44056.

3. Defendant Professional Labor Support, LLC ("PLS") is an Illinois Limited Liability Corporation that conducts business in Illinois and Indiana. According to the Illinois Secretary of State, its registered agent and principal office is located at 2100 Manchester Road, Suite 1750, Wheaton, Illinois 60187. According to Defendant PLS's application for membership to the Association of Builders and Contractors, Inc., PLS operates from an address of 116 South Lombard Street, Mahomet, Illinois, 61853. Upon information and belief, all of its members are citizens of Illinois and/or Indiana and none of the members are citizens of Ohio.

4. Defendant John Black is an owner and operator of PLS and an Indiana resident. He currently resides at 2310 Allison Avenue, Apt. 100, Indianapolis, Indiana 46224. Black was employed by Tradesmen from April 2, 2007 until October 5, 2009. When he left his employment with Tradesmen, he was General Manager of the Columbus, Indiana office and refused to accept a position as Project Coordinator at Tradesmen's Indianapolis, Indiana office.

5. Defendant Todd Walker is an owner and operator of PLS and an Indiana resident.

He currently resides at 2118 Timberlake Trail, Ft. Wayne, Indiana 46804. Walker was employed by Tradesmen from January 3, 2006 until January 12, 2010, when his employment with Tradesmen ended. Walker was General Manager of Tradesmen's Ft. Wayne, Indiana office.

6. Defendant Ryan Ellis is an owner and operator of PLS and an Indiana resident. He currently resides at 2084 Pawnee Court East, Columbus, Indiana 47203. Ellis was employed by Tradesmen from February 9, 1998 until January 12, 2010, when his employment with Tradesmen ended. Ellis was Area Manager for the Ohio Valley, which included Tradesmen operations in Indiana and Kentucky, when his employment with Tradesmen ended.

7. Defendant Ryan Boyer is an owner and operator of PLS and an Indiana resident. He currently resides at 4366 Princeton Park Drive, Columbus, Indiana 47201. Boyer was employed by Tradesmen from February 8, 2002 until January 4, 2010, when his employment with Tradesmen ended. When his employment with Tradesmen ended, he was the General Manager of Tradesmen's Indianapolis, Indiana office.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a), as the matter is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

9. The Court has personal jurisdiction over each of the Defendants as Defendants have each caused harm and tortious injury by their acts and omissions within Illinois, Defendants each caused harm and tortious injury in Illinois by acts and omissions outside of Illinois, each Defendant has had sufficient contacts in Illinois and has purposely availed itself or himself for the privilege of conducting activities in Illinois such that the exercise of personal jurisdiction over each Defendant comports to traditional notions of fair play and substantial justice as

Defendants should reasonably anticipate being called into court in Illinois.

10. Venue is appropriate in this District, pursuant to 28 U.S.C. §1391(b), as substantial part of the events and omissions giving rise to Tradesmen's claims occurred in the judicial district compromising the United States District Court for the Central District of Illinois, including the formation and operation of Defendant PLS by Defendants Black, Ellis, Walker and Boyer in direct competition with Tradesmen.

## FACTUAL ALLEGATIONS

11. Tradesmen International, Inc. is a construction labor support company. Tradesmen hires and directly employs workers, known as Field Employees, in a complete range of manual and mechanical skilled trades, leasing its employees to clients in various construction, maritime, commercial, and industrial enterprises in both the private and public sectors. Clients submit work orders to Tradesmen as needed and retain the leased Tradesmen employees on work assignments for as long as their services are required, as determined by the client. Tradesmen, an Ohio corporation, maintains 86 offices in 34 states, including offices in Lafayette, IN, Columbus, IN, Evansville, IN, Fort Wayne, IN, Indianapolis, IN and St. Charles, IL.

12. Defendant PLS claims that it provides labor staffing, labor consulting, networking, and safety services to contractors.

13. Defendant PLS' services are substantially similar to and in direct competition with the services provided by Tradesmen.

14. Defendant PLS' main office is within 100 miles of Tradesmen's Lafayette, Indiana office.

15. Defendant PLS is owned and operated by Defendants Black, Ellis, Walker and Boyer.

16. Defendants Black, Ellis, Walker and Boyer are all parties to Non-Compete and Non-Disclosure Agreements that are attached to this Complaint as Exhibits A, B, C and D (the "Agreements").

17. Defendant Black is party to a Confidentiality and Non-Competition Agreement with Tradesmen that he entered into on April 2, 2007. (Attached as Exhibit A)

> 1. Employee hereby agrees that … Employee SHALL NOT during the Employee's employment with the Company, and for a period of eighteen (18) months after Employee's termination of employment with Company, commit, undertake or abet any of the acts more specifically described below in:
>
> A. The Indiana Counties of Marion, Hancock, Shelby, Johnson, Morgan, Hendricks, Putnam, Montgomery, Boone, Hamilton and Madison; or
>
> B. Within one hundred (100) miles of any field office of the Company; or
>
> C. Within twenty-five miles (25) of any location at or to which the Company is providing its services outside of the one hundred (100) miles referenced in Section 1(B) herein:
>
> (i) Non-Competition. Cause any entity that Employee controls or is affiliated with, directly or indirectly, for himself or herself, through, on behalf of, or in conjunction with any person, persons, or legal entity, own, maintain, operate, engage in, be employed by, consult or contract with, in violation of the terms of this Agreement or have any interest in any business which is competitive to the Business of the Company as described below;
>
> (ii) Non-Piracy of Customers or Prospective Customers. Contact, enter into discussions, influence or attempt to influence, solicit, or in any manner transact business with any Customer or Prospective Customer (as defined below) or labor supplier of the Company for the purpose of causing such Customer, Prospective Customer or labor supplier to refuse, cease or reduce the amount of business the Customer, Prospective Customer or supplier is doing with the Company or to do business with any competitor of the Company on behalf of any subsequent employer of the Employee, or the Employee;

(iii) Non-Interference with Customers or Prospective Customers. Employee agrees that Employee shall not, directly or indirectly, as an employee, consultant, contractor, principal, agent, owner, or on Employee's own behalf, or on the behalf of another person or entity, engage in providing services to any Customer of Prospective Customer where such services are competitive with [Tradesmen];

(iv) Non-Solicitation and Non-Hiring of Employees. Employee shall not, directly or indirectly, as en Employee, consultant, contractor, principal, agent, owner, on Employee's own behalf, or on the behalf of another person or entity: (a) induce or attempt to induce any person employed by the Company to leave their employment with the Company; (b) hire or employ, or attempt to hire or employ any person employed by the Company; or (c) assist any other person or entity in the hiring of any person employed by the Company. These restrictions shall apply where the services provided by the hiring entity are competitive with the services and business provided by the Company;

(v) Public Announcements/Mailings. Make or permit the making of any public announcement or statement of any kind that the Employee was formerly employed with the Company which announcement or statement has its purpose or effect, directly or indirectly, to cause a violation of the provisions of this Agreement. This includes any announcement to employees, clients, or field or office employees through any media, mailing or otherwise, of Employee's employment by any other entity engaged in the Business of the Company;

* * *

2. Employee agrees not to ever disclose or use at any time any proprietary information of the Company or its affiliates, whether Employee has that information committed to memory or it is embodied in writing or any other physical form, except in pursuit of the business activities and interests of the Company, its affiliates or with the prior written consent of the Company. For the purposes of this Agreement, the phrase "proprietary information of the Company or its affiliates" means all confidential and trade secret information relating to the Company or its affiliates that is learned or made known to the Employee during the performance of Employee's duties for the Company. Employee further agrees not to remove from the premises of the Company or its affiliates at any time, any

> document or object containing or reflecting any proprietary information of the Company or its affiliates except in the pursuit of the Business of the Company or its affiliates. Employee recognizes that all such documents and objects, whether developed by Employee or someone else for the Company or its affiliates, are the exclusive property of the Company and its affiliates.

18. On January 14, 2010, Tradesmen's legal counsel sent a letter to Defendant Black attaching a copy of the executed Agreement and requesting he comply with it.

19. Defendant Black has not complied with the Agreement.

20. Defendant Boyer is party to a Confidentiality and Non-Competition Agreement with Tradesmen that he entered into on February 25, 2002. (Attached as Exhibit B). This agreement provides, in part, that:

> 1. Employee hereby agrees that he SHALL NOT, during his employment with the Company, and for a period of eighteen (18) months after Employee's termination of employment with the Company, for any reason, in:
>
> A. The Indiana Counties of Marion, Hamilton, Boone, Hendricks, Johnson, Shelby, Hancock, Tippecanoe, Jasper, Allen and Montgomery; or
>
> B. Within one hundred (100) miles of any field office of the Company; or
>
> C. Within twenty-five miles (25) of any location at or to which the Company is providing its services outside of the one hundred (100) miles:
>
> (i) Cause any entity that Employee controls or is affiliated with to , directly or indirectly, for himself or through, on behalf of, or in conjunction with any person, persons, or legal entity, own, maintain, operate, engage in, be employed by, consult or contract with, in violation of the terms of this agreement or have any interest in any business which is the same as or similar to the business engaged by the Company as described in Exhibit "A," which is attached hereto and incorporated herein or in any manner directly or indirectly compete with the Company;
>
> (ii) Influence or attempt to influence, solicit, or in any manner

transact business with any customer or supplier of the Company for the purpose of causing such customer or supplier to cease or reduce the amount of business the customer or supplier is doing with the Company or to do business with any competitor of the Company on behalf of any subsequent employer of the employee, or the employee;

(iii) Contact or enter into any discussions with any customer of the Company; and

(iv) Recruit or attempt to recruit or cause any other person or firm to recruit or attempt to recruit any person, including any office or field employee, employed by the Company.

(v) Make or permit the making of any public announcement or statement of any kind that the Employee was formerly employed with the Company which announcement or statement has its purpose or effect, directly or indirectly, to cause a violation of the provisions of this Agreement. This includes any announcement to employees, clients, or field or office employees through any media, mailing or otherwise, of employee's employment by any entity engaged in the same or similar business as described in Exhibit "A."

The parties recognize that such geographical and time limitations are reasonable and do not impose a greater restraint than is necessary to protect the legitimate business interest of the Company.

2. Employee agrees not to ever disclose or use at any time any proprietary information of the Company or its affiliates, whether he has that information committed to memory or it is embodied in writing or any other physical form, except in pursuit of the business activities and interests of the Company or its affiliates or with the prior written consent of the Company. For the purposes of this agreement, the phrase "proprietary information of the Company or its affiliates" means all confidential and trade secrets information relating to the Company or its affiliates that is learned or made known to the Employee during the performance of his duties for the Company. Employee further agrees not to remove from the premises of the Company or its affiliates at any time, any document or object containing or reflecting any proprietary information of the Company or its affiliates except in the pursuit of the business of the Company or its affiliates. Employee recognizes that all such documents and objects, whether developed by Employee or someone else for the Company or its affiliates, are the exclusive property of the Company and its affiliates.

21. On January 14, 2010, Tradesmen's legal counsel sent a letter to Defendant Boyer attaching a copy of the executed Agreement and requesting he comply with it.

22. Defendant Boyer has not complied with the Agreement.

23. Defendant Ellis is party to a Confidentiality and Non-Competition Agreement with Tradesmen that he entered into on February 2, 1998. (Attached as Exhibit C). This agreement provides, in part, that:

> 1. Employee hereby agrees that he shall not, and shall cause any entity that he controls or is affiliated with not to, during his employment with the Company and for a period of one (1) year after the date of Employee's termination of employment with the Company, carry on, engage in, own, manage, operate, finance, consult, or contract with any business which is engaged in the business described in Exhibit "A", which is attached hereto and incorporated herein, or in any manner directly or indirectly compete with the Company, anywhere in Cuyahoga, Summit, Lorain, Portage and Medina Counties or any other location outside of said counties where such location is within 100 miles of an office of the company (the "Territory"), both parties recognizing that such geographical limitation is reasonable; or to solicit any customer or supplier of the company to cease doing business with the Company within the aforementioned Territory after the date of this Agreement.
>
> 2. Employee agrees not to ever disclose or use at any time any proprietary information of the Company or its affiliates, whether he has that information committed to memory or it is embodied in writing or any other physical form, except in pursuit of the business activities and interests of the company or its affiliates or with the prior written consent of the Company. For the purposes of this Agreement, the phrase "proprietary information of the Company or its affiliates" means all confidential information relating to the Company or its affiliates that is protected by law and that Employee obtains by reason of his employment with the Company or during the performance of his duties for it. Employee agrees not to make known to any person, firm, or corporation the names or addresses of any of the customers of the Company or any other information pertaining to them or call on, solicit or take away, whether on behalf of the Employee or on behalf of any subsequent employer of the Employee, any of the Company's customers on whom the Employee called or with whom Employee became acquainted during the course of his employment with the Company. Employee further agrees not to remove from the premises of the Company or its affiliates at any time any document or object containing or reflecting any proprietary information of the Company or its affiliates except in

> the pursuit of the business of the Company or its affiliates. Employee recognizes that all such documents and objects, whether developed by Employee or someone else for the Company or its affiliates, are the respective exclusive property of the Company and its affiliates.

24. On January 14, 2010, Tradesmen's legal counsel sent a letter to Defendant Ellis attaching a copy of the executed Agreement and requesting he comply with it.

25. Defendant Ellis has not complied with the Agreement.

26. Defendant Walker is party to a Confidentiality and Non-Competition Agreement with Tradesmen that he entered into on January 3, 2006. (Attached as Exhibit D). This agreement provides in part, that:

> 1. Employee hereby agrees that … Employee SHALL NOT during the Employee's employment with the Company, and for a period of eighteen (18) months after Employee's termination of employment with Company, commit, undertake or abet any of the acts more specifically described below in:
>
> A. The Indiana Counties of Allen, IN; Whitley, IN; Noble, IN; DeKalb, IN; LaGrange, IN; Steuben, IN; Huntington, IN; Wells, IN; Adams, IN; Van Wert, OH; Paulding, OH; and Mercer, OH; or
>
> B. Within one hundred (100) miles of any field office of the Company; or
>
> C. Within twenty-five miles (25) of any location at or to which the Company is providing its services outside of the one hundred (100) miles referenced in Section 1(B) herein:
>
> (i) <u>Non-Competition.</u> Cause any entity that Employee controls or is affiliated with, directly or indirectly, for himself or herself, through, on behalf of, or in conjunction with any person, persons, or legal entity, own, maintain, operate, engage in, be employed by, consult or contract with, in violation of the terms of this Agreement or have any interest in any business which is competitive to the Business of the Company as described below;
>
> (ii) <u>Non-Piracy of Customers or Prospective Customers</u>. Contact, enter into discussions, influence or attempt to influence, solicit, or in any manner transact business with any Customer or Prospective Customer (as defined below)

or labor supplier of the Company for the purpose of causing such Customer, Prospective Customer or labor supplier to refuse, cease or reduce the amount of business the Customer, Prospective Customer or supplier is doing with the Company or to do business with any competitor of the Company on behalf of any subsequent employer of the Employee, or the Employee;

(iii) Non-Interference with Customers or Prospective Customers. Employee agrees that Employee shall not, directly or indirectly, as an employee, consultant, contractor, principal, agent, owner, or on Employee's own behalf, or on the behalf of another person or entity, engage in providing services to any Customer or Prospective Customer where such services are competitive with the Business of the Company;

(iv) Non-Solicitation and Non-Hiring of Employees. Employee shall not, directly or indirectly, as an Employee, consultant, contractor, principal, agent, owner, on Employee's own behalf, or on the behalf of another person or entity: (a) induce or attempt to induce any person employed by the Company to leave their employment with the Company; (b) hire or employ, or attempt to hire or employ any person employed by the Company; or (c) assist any other person or entity in the hiring of any person employed by the Company. These restrictions shall apply where the services provided by the hiring entity are competitive with the services and business provided by the Company;

(v) Public Announcements/Mailings. Make or permit the making of any public announcement or statement of any kind that the Employee was formerly employed with the Company which announcement or statement has its purpose or effect, directly or indirectly, to cause a violation of the provisions of this Agreement. This includes any announcement to employees, clients, or field or office employees through any media, mailing or otherwise, of Employee's employment by any other entity engaged in the Business of the Company;

* * *

2. Employee agrees not to ever disclose or use at any time any proprietary information of the Company or its affiliates, whether Employee has that information committed to memory or it is embodied in writing or any other

> physical form, except in pursuit of the business activities and interests of the Company, its affiliates or with the prior written consent of the Company. For the purposes of this Agreement, the phrase "proprietary information of the Company or its affiliates" means all confidential and trade secret information relating to the Company or its affiliates that is learned or made known to the Employee during the performance of Employee's duties for the Company. Employee further agrees not to remove from the premises of the Company or its affiliates at any time, any document or object containing or reflecting any proprietary information of the Company or its affiliates except in the pursuit of the Business of the Company or its affiliates. Employee recognizes that all such documents and objects, whether developed by Employee or someone else for the Company or its affiliates, are the exclusive property of the Company and its affiliates.

27. On January 14, 2010, Tradesmen's legal counsel sent a letter to Defendant Walker attaching a copy of the executed Agreement and requesting he comply with it.

28. Defendant Walker has not complied with the Agreement.

29. All four Agreements are governed by Ohio law.

30. Despite the restrictions contained in these Agreements, Defendants Black, Boyer, Ellis and Walker have persisted in unlawfully and unfairly competing against Tradesmen, in breach of the Agreements, individually and jointly through their company, PLS.

31. On or about October 27, 2009, Defendants Black, Boyer, Ellis and Walker incorporated PLS for the purpose of competing with Tradesmen.

32. Defendant PLS' current address is within the geographic restriction contained in the Agreements.

33. Since forming PLS, Defendants Black, Boyer, Ellis and Walker have operated PLS in violation of their Agreements.

34. Despite forming a Company to compete against Tradesmen, Defendants Boyer, Ellis and Walker continued to work for Tradesmen until January 2010.

35. Defendants' operation of PLS while still employed by Tradesmen violated their duty of loyalty.

36. Before their employment with Tradesmen ended, Defendants Black, Boyer, Ellis and Walker violated their Agreements, the Uniform Trade Secrets Act and their duty of loyalty by stealing trade secrets and other proprietary information belonging to Tradesmen.

37. On or about December 5, 2009, Defendant Boyer e-mailed a list of Tradesmen client information to his personal account.

38. On or around December 15, 2009, Defendants Ellis and Defendant Walker e-mailed confidential information on Tradesmen client leads to each other.

39. Defendant Walker e-mailed Defendant Black a list of compensation plans that Tradesmen offered its employees on January 4, 2010.

40. On January 4, 2010, Defendant Walker e-mailed proprietary Tradesmen business information to his personal email account. This information included client lists, example invoice forms, bill rates, recruitment power point for managers, letter templates for client development, and an internal memo regarding OSHA investigations.

41. Also on January 4, 2010, Defendant Walker e-mailed proprietary D&B Reports to his personal account. These D&B reports consist of sales leads developed internally by Tradesmen using a combination of information that is not readily available to the public, some of which Tradesmen pays to access from Dun & Bradstreet Sales and Marketing Solutions.

42. These D&B Reports are proprietary, highly confidential, and fundamental to Tradesmen's business and its ability to successfully compete in a difficult market.

43. The information Defendant Walker sent to himself contained over 10,000 sales leads developed by Tradesmen for the Midwest area.

44. The information taken by Defendants Black, Boyer, Ellis and Walker is valuable to Tradesmen because it is not generally known to Tradesmen competitors.

45. Defendants Black, Boyer, Ellis and Walker have used and are using this information to unfairly compete with Tradesmen.

46. Defendants Black, Boyer, Ellis and Walker knew that this customer information and other information constituted Tradesmen trade secrets.

47. Defendants Black, Boyer, Ellis, Walker and PLS have used customer information and other trade secrets to unfairly compete with Tradesmen.

48. Information on Tradesmen's compensation plans is highly confidential and Black did not have access to this information when he was employed by Tradesmen.

49. Defendants Black, Boyer, Ellis and Walker have not returned Tradesmen's confidential trade secret information.

50. Defendants Black, Boyer, Ellis, Walker and PLS are using Tradesmen's trade secret information to unfairly compete with Tradesmen.

51. Defendants Black, Boyer, Ellis and Walker have used and are using proprietary and confidential trade secrets of Tradesmen to compete with Tradesmen by soliciting business from, including but not limited to TCR Systems, Inc. an Illinois company, and Motorsports Construction, an Indianapolis, Indiana company.

52. TCR Systems had signed an agreement with Tradesmen under which Tradesmen would provide staffing for TCR System projects upon request.

53. Motorsports Construction had singed an agreement with Tradesmen under which Tradesmen would provide Motorsports Construction staffing upon request.

54. In addition to entering into agreements to provide staffing to TCR Systems and Motorsports Construction and in justified expectation of further business as a result of these agreements, Tradesmen invested substantial resources to improve its relationship and goodwill

with both TCR Systems and Motorsports Construction.

55. In violation of the Agreements, Defendants Black, Boyer, Ellis and Walker have solicited and are continuing to solicit customers of Tradesmen that they knew and dealt with during their employment with Tradesmen, including but not limited to TCR Systems, Inc. an Illinois company, and Motorsports Construction, an Indianapolis, Indiana company.

56. Defendants Black, Boyer, Ellis, Walker and PLS have interfered with Tradesmen's contractual and other business relations by knowingly using trade secrets to solicit Tradesmen clients and prospective clients, including but not limited to TCR Systems, Inc. an Illinois company, and Motorsports Construction, an Indianapolis, Indiana company.

57. Defendants Black, Boyer, Ellis, Walker and PLS have used Tradesmen's proprietary, trade secret information to submit staffing bids in Illinois and Indiana that compete with Tradesmen bids.

58. These bids are within the geographic area restricted by the Agreements and in violation of the Agreements.

59. Defendants Black, Boyer, Ellis and Walker's actions have injured and continue to injure Tradesmen's business.

60. In violation of the Agreements, Defendants Black, Boyer, Ellis and Walker have used and are using proprietary and confidential trade secret information to solicit employees of Tradesmen.

61. In violation of the Agreements, Defendants Black, Boyer, Ellis, Walker through PLS filed for membership with the Association of Builders and Contractors, Inc. (ABC) in the state of Indiana.

**FIRST CAUSE OF ACTION AGAINST DEFENDANTS BLACK, WALKER, ELLIS AND BOYER**

**(Breach of Contract)**

62. Tradesmen incorporates by reference as if fully rewritten herein, the allegations of paragraphs 1 through 61 of this Complaint.

63. Defendants Black, Walker, Ellis and Boyer are parties to valid and enforceable Non-Compete and Non-Disclosure Agreements with Tradesmen.

64. Defendants Black, Walker, Ellis and Boyer have each breached and are in breach of their Agreements with Tradesmen through the actions described above by misappropriating Tradesmen's trade secrets, confidential information and Business and Customer Information, by failing to return Tradesmen's confidential Business and Customer Information, by soliciting Tradesmen's existing and prospective customers by competing against Tradesmen within the geographical limits, and by violating other terms of their Agreements.

65. Tradesmen performed all acts and covenants required of it under the Agreement.

66. As a direct and proximate result of Black, Walker, Ellis and Boyer's breach of contract, Tradesmen has been damaged in an amount to be determined at trial.

**SECOND CAUSE OF ACTION AGAINST DEFENDANTS BLACK, WALKER, ELLIS, BOYER AND PLS**

**(Misappropriation of Trade Secrets)**

67. Tradesmen incorporates by reference as if fully rewritten herein, the allegations of paragraphs 1 through 66 of this Complaint.

68. Some of the information imparted by Tradesmen to Black, Walker, Ellis and Boyer while they were employed by Tradesmen constitutes protectable trade secrets under Ohio law.

69. Tradesmen imparted such information to Black, Walker, Ellis and Boyer in a confidential employer-employee relationship and with the understanding of all parties that it would remain confidential.

70. By Black, Walker, Ellis, Boyer and PLS' actions as hereinbefore described, they are in violation of the Ohio Trade Secrets Act, Ohio Rev. Code §1333.61 *et seq.* and the Illinois Trade Secrets Act, 763 ILCS 1065/1-9.

71. As a direct and proximate result of Black, Walker, Ellis and Boyer's actions in violation of the Ohio Trade Secrets Act and Illinois Trade Secrets Act Tradesmen has been damaged in an amount to be determined at trial.

72. Black, Walker, Ellis, Boyer and PLS' actions were undertaken with actual malice, thereby entitling Tradesmen to an award of punitive damages and reasonable attorney's fees and costs in an amount to be determined at trial.

73. Black, Walker, Ellis, Boyer and PLS' retention and use of these trade secrets has caused and is causing actual harm to Tradesmen's business and Tradesmen is entitled to a court order requiring Defendants return this information and damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION AGAINST DEFENDANTS BLACK, WALKER, ELLIS, BOYER AND PLS**

**(Misappropriation of Confidential Information)**

74. Tradesmen incorporates by reference as if fully rewritten herein, the allegations of paragraphs 1 through 73 of this Complaint.

75. Some of the information imparted by Tradesmen to Black, Walker, Ellis and Boyer while they were employed by Tradesmen constitutes protectable confidential information under Ohio law.

76. Tradesmen imparted such information to Black, Walker, Ellis and Boyer in a confidential employer-employee relationship and with the understanding of all parties that it would remain confidential.

77. By their actions as hereinbefore described, Black, Walker, Ellis and Boyer are in violation of Ohio Rev. Code §1333.81.

78. As a direct and proximate result of Black, Walker, Ellis and Boyer's actions in violation of Ohio Rev. Code §1333.81, Tradesmen has been damaged in an amount to be determined at trial.

79. Black, Walker, Ellis and Boyer's actions were undertaken with actual malice, thereby entitling Tradesmen to an award of punitive damages and reasonable attorney's fees and costs in an amount to be determined at trial.

80. Black, Walker, Ellis and Boyer's continued wrongful retention of Tradesmen's confidential information has caused and is causing actual harm to Tradesmen and Tradesmen is entitled to a court order demanding the return of this information and damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**(Declaratory Judgment)**

81. Tradesmen incorporates by reference as if fully rewritten herein, the allegations of paragraphs 1 through 80 of this Complaint.

82. A real and justifiable controversy exists among the parties concerning the construction, validity, and enforceability of the Agreements, in that Black, Walker, Ellis and Boyer's refusal to abide by the terms of the Agreements causes the parties to have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

83. Speedy relief is necessary to preserve and protect the rights and interests of Tradesmen.

84. A declaratory judgment will terminate the uncertainty and controversy among the parties concerning the construction, validity and enforceability of the Agreements.

85. Pursuant to 28 U.S.C. §§ 2201 and 2202, ILCS 110/ 2-701, and Ohio Rev. Code §2721.01 *et seq.,* Tradesmen is entitled to a declaratory judgment that the Agreements are reasonable, valid and enforceable.

**FIFTH CAUSE OF ACTION AGAINST DEFENDANTS BLACK, WALKER, ELLIS, BOYER AND PLS**

**(Permanent Injunctive Relief)**

86. Tradesmen incorporates by reference as if fully rewritten herein, the allegations of paragraphs 1 through 85 of this Complaint.

87. Black, Walker, Ellis and Boyer are causing, and will continue to cause, irreparable interference with and damage to Tradesmen's business and goodwill, which damage cannot be adequately compensated in money damages, and these irreparable injuries will continue to be suffered unless and until Defendants and those acting in concert or participation with them, are compelled to comply with the Contract, the Ohio Trade Secrets Act, and Ohio Rev. Code §1333.81.

88. Unless permanent injunctive relief is entered by this Court directing Defendants and those acting in concert or participating with them are ordered to comply with the Contract, the Ohio and Illinois Trade Secrets Acts, and Ohio Rev. Code §1333.81, Tradesmen will continue to suffer irreparable injury for which it has no adequate remedy at law, and the injury that will be inflicted on Tradesmen is greater than that which could result to Defendants by the granting of the requested injunctive relief. The granting of the requested injunctive relief would

not cause injury to the public.

**SIXTH CAUSE OF ACTION AGAINST DEFENDANTS WALKER, ELLIS AND BOYER**

**(Breach of the Duty of Loyalty)**

89. Tradesmen incorporates by reference as if fully rewritten herein, the allegations of paragraphs 1 through 88 of this Complaint.

90. Defendants Walker, Ellis and Boyer breached their duty of loyalty as employees of Tradesmen by competing with Tradesmen, by diverting Tradesmen business opportunities, and by soliciting customers away from Tradesmen during their employment.

91. Defendants Walker, Ellis and Boyer breached their duty of loyalty by misappropriating confidential business information of Tradesmen during their employment in order to compete with Tradesmen.

92. As a direct and proximate result of Defendants Walker, Ellis and Boyer's breaches of their duty of loyalty to Tradesmen, Tradesmen has suffered economic damages amounting to paid wages and benefits to Defendants Walker, Ellis and Boyer and business lost because of their breach.

**SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS BLACK AND PLS**

**(Tortious Interference with Contractual Relations)**

93. Tradesmen incorporates by reference as if fully rewritten herein, the allegations of paragraphs 1 through 92 of this Complaint.

94. Defendants Black and PLS tortiously interfered with Tradesmen's Agreements with Walker, Ellis, Boyer and other employees.

95. Defendants Black and PLS knew about the valid enforceable Agreements between

Tradesmen and Walker, Ellis and Boyer. The Agreements between Walker, Ellis and Boyer and Tradesmen were enforceable.

96. Defendants Black and PLS intentionally and without justification induced Walker, Ellis and Boyer to breach these Agreements.

97. As a result of Defendants PLS and Black's actions, Tradesmen has been damaged in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS BLACK, WALKER, ELLIS, BOYER AND PLS**

**(Tortious Interference with Business Expectancy)**

98. Tradesmen incorporates by reference as if fully rewritten herein, the allegations of paragraphs 1 through 97 of this Complaint.

99. Tradesmen maintained a valid business expectancy with TCR Systems and Motorsports Construction, as well as others.

100. Defendants Black, Walker, Ellis, Boyer and PLS knew of Tradesmen's valid business relationship and expectancy with TCR Systems and Motorsports Construction, as well as others.

101. Defendants Black, Walker, Ellis, Boyer and PLS intentionally interfered with Tradesmen's valid business relationship and expectancy with these companies.

102. Defendants Black, Walker, Ellis, Boyer and PLS intentional interference with the relationship between Tradesmen and TCR Systems and Motorsports Construction, as well as others was without privilege.

103. Defendants Black, Walker, Ellis, Boyer and PLS's tortious interference with Tradesmen's business and business expectancies caused economic damage to Tradesmen in the

loss of some expected business from these relationships for which Tradesmen is entitled to recover.

**NINTH CAUSE OF ACTION AGAISNT DEFENDANTS BLACK, WALKER, ELLIS AND BOYER**

**(Conversion)**

104. Tradesmen incorporates by reference as if fully rewritten herein, the allegations of paragraphs 1 through 103 of this Complaint.

105. Black, Walker, Ellis and Boyer wrongfully and without authorization removed information from Tradesmen's computers that constitutes the intellectual property of Tradesmen, and Black, Walker, Ellis and Boyer have refused to return this information to Tradesmen despite their obligations under the Agreement and requests of Tradesmen that he comply with the Agreement.

106. Black, Walker, Ellis and Boyer's wrongful retention of this information has prevented Tradesmen from fully using the information with its full competitive value to the exclusion of others and as a result of Black, Walker, Ellis and Boyer's conversion of Tradesmen's property to Black, Walker, Ellis and Boyer's own use, Tradesmen has suffered damages in being unable to use its intellectual property.

**TENTH CAUSE OF ACTION**

**(Civil Conspiracy)**

107. Tradesmen incorporates by reference as if fully rewritten herein, the allegations of paragraphs 1 through 106 of this Complaint.

108. Defendants Black, Walker, Ellis, Boyer and PLS' conduct, as described in paragraphs 12 through 15 and 30 through 58 of this Complaint, constitutes an unlawful civil conspiracy to breach Black, Walker, Ellis and Boyer's duties of loyalty to Tradesmen, to divert

corporate opportunities from Tradesmen; and to misappropriate the business of Tradesmen suppliers, customers, confidential and proprietary business information, property, and other resources of Tradesmen.

109. In engaging in this unlawful civil conspiracy against Tradesmen, Defendants acted intentionally, willfully, maliciously, and with reckless indifference to Tradesmen's rights. Defendants' conduct was outrageous.

110. As a result of Defendants' unlawful civil conspiracy, Tradesmen has suffered damages in the form of lost profits; lost customers and customer goodwill; loss of the confidentiality of Tradesmen's confidential and proprietary business information; the amount of the salaries and the cost of employee benefits that Tradesmen provided to PLS, Black, Walker, Ellis and Boyer during the period when they were in breach of their fiduciary duties to Tradesmen; and the value of the property and other resources that Defendants' misappropriated from Tradesmen.

WHEREFORE, Tradesmen prays that this Court:

1. Issue a permanent injunction: (a) compelling Black, Walker, Ellis and Boyer to comply with all of their obligations under the Agreement; (b) enjoining PLS, Black, Walker, Ellis and Boyer from disclosing any Tradesmen Confidential Proprietary information, including but not limited to management of inside or outside sales, inside or outside sales activities, marketing, servicing customers, bidding and quoting customers, and soliciting customers for the sale of products and/or services that are similar to those which are sold by Tradesmen (including, but not limited to data storage and protection services, consulting services with respect thereto); (c) enjoining PLS, Black, Walker, Ellis and Boyer from directly or indirectly soliciting or attempting to solicit business or patronage of any Tradesmen customer or any company

consulted or solicited by Black, Walker, Ellis and Boyer on behalf of Tradesmen as a potential customer; (d) enjoining Black, Walker, Ellis and Boyer from engaging in any activity in direct competition with Tradesmen, whether through employment with a competitor of Tradesmen or some other business or venture, for a period of eighteen (18) months from the date of the Court's order; (e) enjoining Black, Walker, Ellis and Boyer from disclosing or using any of Tradesmen's proprietary, confidential, or trade secret information or otherwise violating the Agreement, and enjoining any third party from disclosing or using any of Tradesmen's proprietary, confidential, or trade secret information that it has learned or discovered through the wrongful action of PLS, Black, Walker, Ellis and Boyer.

2. Order specific enforcement of the Agreements, including the Non-Disclosure and Non-Compete Clauses.

3. Issue a declaratory judgment that the Agreements, including the Non-Disclosure and Non-Compete Clauses, are valid, reasonable and enforceable in all respects.

4. Order PLS, Black, Walker, Ellis and Boyer to return to Tradesmen all documentary or other materials originating from and/or which are the property of or belong to Tradesmen which are in their possession, custody or control.

5. Order an accounting from PLS, Black, Walker, Ellis and Boyer for all profits earned as a result of their use or disclosure of Tradesmen's confidential information and trade secrets.

6. Award Tradesmen compensatory damages for salaries and other benefits paid while Defendants were in breach of their duty of loyalty.

7. Award Tradesmen compensatory damages for PLS, Black, Walker, Ellis and Boyer's conversion of Tradesmen's intellectual property.

8. Award compensatory damages in excess of $25,000 and punitive damages in accordance with the evidence.

9. Award Tradesmen its attorney's fees and costs incurred in bringing and prosecuting this action.

10. Grant such other relief as equity in Tradesmen's cause may require or permit.

Respectfully submitted,

s/Michael A. Warner, Jr.

Michael A. Warner, Jr. (06208011)
Deidra A. Norris (06290356)
Franczek Radelet P.C.
300 South Wacker Drive
Suite 3400
Chicago, IL 60606
Telephone: 312.986.0300
Facsimile: 312.986.9192
maw@franczek.com
dan@franczek.com

James D. Kurek (0023523) – pending admission
Christopher G. Kuhn (0082822) – pending admission
MILLISOR & NOBIL CO. L.P.A.
9150 South Hills Boulevard, Suite 300
Broadview Heights, Ohio 44147
Telephone: (440) 838-8800
Facsimile: (440) 838-8805
jkurek@millisor.com
ckuhn@millisor.com

Attorneys for Plaintiff,
Tradesmen International, Inc.