E-FILED
Wednesday, 05 May, 2010  02:13:29 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

INDIANAPOLIS FIELD OFFICE CONFIDENTIALITY
AND NON-COMPETITION AGREEMENT

THIS AGREEMENT ("Agreement") made and entered into this 2 day of April, 2007, by and between John Black ("Employee") and TRADESMEN INTERNATIONAL, INC. ("Company"), an Ohio corporation, with an office location at 4040 West 71st Street, Indianapolis, Indiana 46268, hereinafter sometimes collectively referred to as the ("Parties").

WITNESSETH:

WHEREAS, the Parties recognize and acknowledge that the Employee, over the course of Employee's employment as a(n) Field Representative, will develop substantial knowledge of the business of the Company; and

WHEREAS, the information which the Employee will learn will include confidential business information and trade secrets of the Company; and

WHEREAS, such knowledge and information includes, but is not limited to, market by market pricing, costs, profit margins, customer identities and information; and the manner of doing business constitutes confidential business information and trade secrets of the Company; and

WHEREAS, the Employee has full responsibility for developing the business of the Company's Field Office including, among other duties, maintaining business relationships with the Company's existing customers and establishing business relationships with new customers; and

WHEREAS, the Employee will periodically attend local, regional and national meetings and seminars with Company Field Representatives, District Managers, Operation Managers, Territorial Managers, Regional Vice Presidents and other Executive Officers of the Company, during which Confidential Information concerning the Company and its Field Offices' financial results, business strategies, marketing plans, and other business specific programs and objectives will be presented and discussed; and

WHEREAS, the Parties hereto further recognize and acknowledge that the Employee's participation in a business of the same sort as, or similar to, the business of the Company immediately subsequent to or during Employee's employment with the Company would have a severe and irreparable adverse effect upon the operations and prospects of the Company's business because of the confidential business information and trade secrets Employee will have or has learned while employed by the Company; and


EXHIBIT A

WHEREAS, the Parties recognize and agree that Employee is executing this Agreement in consideration of the Employee's (i) employment or continued employment with the Company; (ii) employment in the position of a(n) _FIELD  REP_ ; and (iii) inclusion in the compensation plans adopted by the Company from time-to-time as it, in its sole discretion, shall so determine; and

WHEREAS, the Parties hereto deem it to be in their best interests to enter into this Agreement.

NOW THEREFORE, in consideration of the Employee's (i) employment or continued employment by the Company as a(n) _FIELD  REP_ ; (ii) inclusion in compensation plans that the Company may adopt from time-to-time; and (iii) other good and valuable consideration including those recited above, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby mutually agree as follows:

1. Employee hereby agrees that in consideration of Employee's employment by the Company and other benefits conferred thereby, Employee SHALL NOT during the Employee's employment with the Company, and for a period of eighteen (18) months after Employee's termination of employment with the Company, commit, undertake or abet any of the acts more specifically described below in:

   A. The Indiana Counties of Marion, Hancock, Shelby, Johnson, Morgan, Hendricks, Putnam, Montgomery, Boone, Hamilton and Madison; or

   B. Within one hundred (100) miles of any field office of the Company; or

   C. Within twenty-five miles (25) of any location at or to which the Company is providing its services outside of the one hundred (100) miles referenced in Section 1(B) herein:

       (i) Non-Competition. Cause any entity that Employee controls or is affiliated with, directly or indirectly, for himself or herself, through, on behalf of, or in conjunction with any person, persons, or legal entity, own, maintain, operate, engage in, be employed by, consult or contract with, in violation of the terms of this Agreement or have any interest in any business which is competitive to the Business of the Company as described below;

       (ii) Non-Piracy of Customers or Prospective Customers. Contact, enter into discussions, influence or attempt to influence, solicit, or in any manner transact business with any Customer or Prospective Customer (as defined below) or labor supplier of the Company for the purpose of causing such Customer, Prospective Customer or labor supplier to refuse, cease or reduce the amount of business the Customer, Prospective Customer or supplier is doing with the Company or to do business with any competitor of the Company on behalf of any subsequent employer of the Employee, or the Employee;

(iii) <u>Non-Interference with Customers or Prospective Customers</u>. Employee agrees that Employee shall not, directly or indirectly, as an employee, consultant, contractor, principal, agent, owner, or on Employee's own behalf, or on the behalf of another person or entity, engage in providing services to any Customer or Prospective Customer where such services are competitive with the Business of the Company;

(iv) <u>Non-Solicitation and Non-Hiring of Employees</u>. Employee shall not, directly or indirectly, as an Employee, consultant, contractor, principal, agent, owner, on Employee's own behalf, or on the behalf of another person or entity: (a) induce or attempt to induce any person employed by the Company to leave their employment with the Company; (b) hire or employ, or attempt to hire or employ any person employed by the Company; or (c) assist any other person or entity in the hiring of any person employed by the Company. These restrictions shall apply where the services provided by the hiring entity are competitive with the services and business provided by the Company;

(v) <u>Public Announcements/Mailings</u>. Make or permit the making of any public announcement or statement of any kind that the Employee was formerly employed with the Company which announcement or statement has its purpose or effect, directly or indirectly, to cause a violation of the provisions of this Agreement. This includes any announcement to employees, clients, or field or office employees through any media, mailing or otherwise, of Employee's employment by any other entity engaged in the Business of the Company;

(vi) <u>Definitions</u>. The following definitions shall apply to the provisions of this paragraph:

   a. "<u>Customer</u>" for purposes of this Agreement, "Customer" is defined as any person or entity (i) to whom Employee provides services as an Employee of the Company; (ii) to whom services were provided by any other Company employee that the Employee, directly or indirectly, managed or supervised at any time during Employee's employment by the Company; (iii) to whom the Company provided services during Employee's employment with the Company; or (iv) who has executed a Client Services Agreement pursuant to which it is entitled to request and receive the Company's services;

   b. "<u>Prospective Customer</u>" for purposes of this Agreement, "Prospective Customer" shall mean any person or entity (i) whom the Employee; (ii) any other Company employee; (iii) the company had solicited; or (iv) made a proposal for the purposes of providing the person or entity its services; and

    c. "Business of the Company" for purposes of this Agreement, "Business of the Company" shall mean the temporary or long-term placement of personnel, including laborers and skilled tradespersons, in the commercial, industrial and residential construction or maintenance industry and dry dock vessel construction, repair, maintenance, refurbishing, in the marine industry and as further described in Exhibit "A" attached hereto.

  (vii) Reasonableness. This Agreement is intended to provide reasonable protection to the legitimate protectable interest of the Company and is not intended to prevent Employee from earning a livelihood. Employee may, for example, become engaged in other aspects of the construction or marine industry that do not involve the temporary or long-term placement of personnel as described in subparagraph 1(C)(vi)(c) herein. The parties recognize that the geographical and time limitations are reasonable and do not include a greater restraint than is necessary to protect the legitimate business interests of the Company.

  The Parties recognize that such geographical and time limitations are reasonable and do not impose a greater restraint than is necessary to protect the legitimate business interests of the Company.

  2. Employee agrees not to ever disclose or use at any time any proprietary information of the Company or its affiliates, whether Employee has that information committed to memory or it is embodied in writing or any other physical form, except in pursuit of the business activities and interests of the Company, its affiliates or with the prior written consent of the Company. For the purposes of this Agreement, the phrase "proprietary information of the Company or its affiliates" means all confidential and trade secret information relating to the Company or its affiliates that is learned or made known to the Employee during the performance of Employee's duties for the Company. Employee further agrees not to remove from the premises of the Company or its affiliates at any time, any document or object containing or reflecting any proprietary information of the Company or its affiliates except in the pursuit of the Business of the Company or its affiliates. Employee recognizes that all such documents and objects, whether developed by Employee or someone else for the Company or its affiliates, are the exclusive property of the Company and its affiliates.

  3. The Parties hereto agree that each of the covenants set forth in this Agreement are separate, distinct and severable not only from the other of such covenants but also from any other provisions in this Agreement. The existence of any claim or cause of action of one party against the other party whether based on this Agreement or otherwise shall not constitute a defense to the enforcement of such covenants. The Parties hereto agree that the covenants set forth in this Agreement are appropriate and reasonable as to time, geographical area, and scope of activity restrained when considered in light of the nature and extent of the circumstances and the Business of the Company and the nature and extent of the Parties' obligations hereunder and that

the covenants do not impose a greater restraint than is necessary to protect the goodwill and business interests of the Company.

4. The Parties agree that if any portion of the restrictive covenants set forth in this Agreement is held to be unreasonable, arbitrary, or against public policy by a court of competent jurisdiction, then such portion of such covenant shall be considered divisible both as to time and geographic area and that a lesser time period or geographic area that is determined to be reasonable by such court, nonarbitrary, and not against public policy, shall be enforced against the party making the covenant.

5. The Parties agree that if a party violates any of the covenants contained in this Agreement, the injuries resulting to a party from such a violation will be irreparable, not susceptible to evaluation in monetary terms and the party injured by such violation shall be entitled to injunctive relief to enforce such covenants in addition to all other rights and remedies that may be available at law or in equity. The Parties further agree that in the event the Company finds it necessary to employ attorneys to enforce the covenants and agreements in this Agreement, and if it is determined that Employee is in breach thereof, Employee shall pay on demand the reasonable attorneys' fees and related costs incurred by the Company in enforcing the covenants and agreements in this Agreement. Employee agrees that the terms of this Paragraph 5 of this Agreement shall be made part of any Order entered by a court of competent jurisdiction finding that Employee has breached any of the terms of this Agreement.

6. <u>Notices</u>. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be given by personal service, facsimile, overnight mail, or by United States Certified Mail, return receipt requested, postage prepaid, addressed (a) to Employee, at Employee's home address as the same may appear on the records of the Company; (b) to the Company, to the President of the Company at the offices of the Company; and (c) to any company or any entity which the Company believes is considering employing or consulting with the Employee in violation of this Agreement, to that company at the offices of the company.

7. <u>Entire Agreement</u>. This Agreement contains the entire understanding between the Parties concerning the subject matter hereof and no modification or amendment of this Agreement shall be effective unless in writing and signed by all of the Parties.

8. <u>Recitals</u>. The Employee acknowledges and recognizes that the recitals contained in this Agreement set forth, in part, the reasonable basis upon which the Company has determined that execution of this Agreement is necessary to protect the trade secrets and confidential information of the Company.

9. <u>Governing Law</u>. This Agreement shall be deemed to be made under and shall be construed in accordance with the laws of the State of Ohio.

10. <u>Binding Effect</u>. This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their successors and assigns, heirs, executors, and administrators, as the case may be. This Agreement shall continue in full force and effect if Employee accepts a position with the Company and shall continue in accordance with its terms,

unless terminated in writing by the Company or superceded by Employee's execution of another Confidentiality and Non-Competition Agreement.

11.  **Counterparts**.  This Agreement may be executed and delivered in one or more counterparts, each of which shall be deemed an original, but all of which shall together constitute one and the same instrument.

IN WITNESS WHEREOF, the undersigned have hereunder executed this Agreement this 2 day of APRIL, 200 7 .

TRADESMEN INTERNATIONAL, INC.          EMPLOYEE

By: _____            _____

Its: District Manager                  Date: 4/2/07

Date: 4/2/07

# EXHIBIT A

Tradesmen is a construction labor contracting company providing laborers and skilled tradespersons, along with related services, to proprietorships, partnerships, construction, industrial, marine companies and public institutions including local, state and federal entities and other businesses and organizations and businesses requiring laborers and skilled tradespersons. The laborers and skilled tradespersons are leased and/or assigned to Customer on an as needed basis. Workers may be moved from work location to work location as needed by the Customer, and can be released by the Customer back to Tradesmen for reassignment for any or no reason, should the Customer elect to do so. Tradesmen International, Inc. also operates a division of its business which provides skilled trade labor workers commonly known as "Travelers," who may or may not work out of an established Tradesmen Field Office and will often work job sites remote to any local Tradesmen Field Office.