# EXHIBIT B

## FIELD REPRESENTATIVE
## CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

THIS AGREEMENT ("Agreement") made and entered into this 25th day of FEBRUARY, 2002, by and between RYAN C. BOYER (Employee) and TRADESMEN INTERNATIONAL, INC. (Company), an Ohio corporation, with an office location at 4295 W. 96th Street, Indianapolis, Indiana 46268, sometimes collectively the (Parties).

### WITNESSETH:

WHEREAS, the parties recognize and acknowledge that the Employee, over the course of his employment, will develop substantial knowledge of the business of the Company; and

WHEREAS, the information which the Employee will learn will include confidential business information and trade secrets of the Company; and

WHEREAS, such knowledge and information including, but not limited to, market by market pricing, costs, profit margins, customer information and identities and the manner of doing business constitutes confidential business information and trade secrets of the Company; and

WHEREAS, the Employee has full responsibility for developing the business of the Company's Indianapolis Field Office, including, among other duties, the maintenance of business relationships with the company's existing customers and the establishing of business relationships with new customers; and

WHEREAS, the Employee will periodically attend local, regional and national meetings and seminars with other Field Representatives, General Managers, Sales Managers, Regional Managers and the Executive Officers of the Company, during which Confidential Information concerning the Company and its field offices financial results, business strategies, marketing plans, and other business specific programs and objectives will be presented and discussed; and

WHEREAS, the parties hereto further recognize and acknowledge that the Employee's participation in a business of the same sort as or similar to the business of the Company immediately subsequent to or during his employment with the Company would have a severe and irreparable adverse effect upon the operations and prospects of the company's business because of the confidential business information and trade secrets Employee will learn while employed by the Company; and

WHEREAS, the parties recognize and agree that Employee is executing this Agreement in consideration of the Employee's (i) employment or continued employment with the Company; (ii) employment in the position of Field Representative of Company's field office, and (iii) inclusion in the Company's Field Representative compensation plans adopted by the Company from time-to-time as it, in its sole discretion, shall so determine; and

EXHIBIT B

WHEREAS, the parties hereto deem it to be in their best interests to enter into this agreement.

NOW THEREFORE, in consideration of the Employee's (i) employment or continued employment by the Company as a Field Representative of the Company's field office; (ii) inclusion in the Company's Field Representative compensation plans; and (iii) other good and valuable considerations including those recited above, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. Employee hereby agrees that he SHALL NOT, during his employment with the Company, and for a period of eighteen (18) months after Employee's termination of employment with the Company, for any reason, in:

   A. The Indiana Counties of Marion, Hamilton, Boone, Hendricks, Johnson, Shelby, Hancock, Tippecanoe, Jasper, Allen and Montgomery; or

   B. Within one hundred (100) miles of any field office of the Company; or

   C. Within twenty-five miles (25) of any location at or to which the Company is providing its services outside of the one hundred (100) miles:

      (i) Cause any entity that Employee controls or is affiliated with to, directly or indirectly, for himself or through, on behalf of, or in conjunction with any person, persons, or legal entity, own, maintain, operate, engage in, be employed by, consult or contract with, in violation of the terms of this agreement or have any interest in any business which is the same as or similar to the business engaged by the Company as described in Exhibit "A," which is attached hereto and incorporated herein or in any manner directly or indirectly compete with the Company;

      (ii) Influence or attempt to influence, solicit, or in any manner transact business with any customer or supplier of the Company for the purpose of causing such customer or supplier to cease or reduce the amount of business the customer or supplier is doing with the Company or to do business with any competitor of the Company on behalf of any subsequent employer of the employee, or the employee;

      (iii) Contact or enter into any discussions with any customer of the Company; and

      (iv) Recruit or attempt to recruit or cause any other person or firm to recruit or attempt to recruit any person, including any office or field employee, employed by the Company.

      (v) Make or permit the making of any public announcement or statement of any kind that the Employee was formerly employed with the Company

which announcement or statement has its purpose or effect, directly or indirectly, to cause a violation of the provisions of this Agreement. This includes any announcement to employees, clients, or field or office employees through any media, mailing or otherwise, of employee's employment by any entity engaged in the same or similar business as described in Exhibit "A."

The parties recognize that such geographical and time limitations are reasonable and do not impose a greater restraint than is necessary to protect the legitimate business interest of the Company.

2. Employee agrees not to ever disclose or use at any time any proprietary information of the Company or its affiliates, whether he has that information committed to memory or it is embodied in writing or any other physical form, except in pursuit of the business activities and interests of the Company or its affiliates or with the prior written consent of the Company. For the purposes of this agreement, the phrase "proprietary information of the Company or its affiliates" means all confidential and trade secrets information relating to the Company or its affiliates that is learned or made known to the Employee during the performance of his duties for the Company. Employee further agrees not to remove from the premises of the Company or its affiliates at any time, any document or object containing or reflecting any proprietary information of the Company or its affiliates except in the pursuit of the business of the Company or its affiliates. Employee recognizes that all such documents and objects, whether developed by Employee or someone else for the Company or its affiliates, are the exclusive property of the Company and its affiliates.

3. The parties hereto agree that each of the covenants set forth in this agreement are separate, distinct and severable not only from the other of such covenants but also from any other provisions in this agreement. The existence of any claim or cause of action of one party against the other party whether based on this agreement or otherwise shall not constitute a defense to the enforcement of such covenants. The parties hereto agree that the covenants set forth in this agreement are appropriate and reasonable as to time, geographical area, and scope of activity restrained when considered in light of the nature and extent of the circumstances and the business of the Company and the nature and extent of the parties' obligations hereunder and that the covenants do not impose a greater restraint than is necessary to protect the goodwill and business interests of the Company.

4. The parties agree that if any portion of the restrictive covenants set forth in this agreement is held to be unreasonable, arbitrary, or against public policy by a court of competent jurisdiction, then such portion of such covenant shall be considered divisible both as to time and geographic area and that a lesser time period or geographic area that is determined to be reasonable by such court, nonarbitrary, and not against public policy, shall be enforced against the party making the covenant.

5. The parties agree that if a party violates any of the covenants contained in this agreement, the injuries resulting to a party from such a violation will be irreparable, not susceptible to evaluation in monetary terms and the party injured by such violation shall be

Feb-26-02  04:24pm   From-TRADESMEN INTERNATIONAL           +3174718155           T-333   P.05/13   F-658

entitled to injunctive relief to enforce such covenants in addition to all other rights and remedies that may be available at law or equity. The parties further agree that in the event the Company finds it necessary to employ attorneys to enforce the covenants and agreements in this agreement, and if it is determined that Employee is in breach thereof, Employee shall pay on demand the reasonable attorney fees and related costs incurred by the Company in enforcing the covenants and agreements in this agreement. Employee agrees that the terms of this Paragraph 5 of this Agreement shall be made part of any Order entered by a court of competent jurisdiction finding that Employee has breached any of the terms of this Agreement.

6. *Notices.* Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be given by personal service or by mailing the same by United States certified mail, return receipt requested, postage prepaid, addressed, (a) if to Employee, at his home address as the same may appear on the records of the Company; (b) if to the Company, to the President of the Company at the offices of the Company; and (c) to any company or any entity which the Company believes is considering employing, employing, or consulting with the Employee in violation of this agreement, to that company at the offices of the company.

7. *Entire Agreement.* This agreement contains the entire understanding between the parties concerning the subject matter hereof and no modification or amendment of this agreement shall be effective unless in writing and signed by all of the parties.

8. *Recitals.* The Employee acknowledges and recognizes that the recitals contained in this Agreement set forth, in part, the reasonable basis upon which the Company has determined that execution of this Agreement is necessary to protect the Trade Secrets and Confidential Information of the Company.

9. *Governing Law.* This agreement shall be deemed to be made under and shall be construed in accordance with the laws of the State of Ohio.

10. *Binding Effect.* This agreement shall be binding upon and shall inure to the benefit of the parties hereto and their successors and assigns, heirs, executors, and administrators as the case may be. This agreement shall continue in full force and effect if Employee accepts a position with the Company other than as a field representative and shall continue in accordance with its terms, unless terminated in writing by the Company, or superceded by Employee's execution of another Confidentiality and Non-Competition Agreement.

11. *Counterparts.* This agreement may be executed and delivered in one or more counterparts, each of which shall be deemed an original, but all of which shall together constitute one and the same instrument.

Feb-26-02 04:25pm From-TRADESMEN INTERNATIONAL +3174718155 T-333 P.06/13 F-658

IN WITNESS WHEREOF, the undersigned have hereunder executed this agreement this __25th__ day of __FEBRUARY__, 20__02__.

TRADESMEN INTERNATIONAL, INC.  EMPLOYEE:

By: _____  _____
Its: __GENERAL MANAGER__

TI-100 FR 9-01
confidential

Feb-26-02  04:26pm   From-TRADESMEN INTERNATIONAL           +3174718155           T-333   P.07/13   F-658

## EXHIBIT A

Tradesmen is a construction labor contracting company which provides laborers and skilled trades persons and safety related products to companies or individuals who require their service. Skilled trades persons will be leased and/or assigned to customers on an as-needed basis. Workers may be moved from job site to job site as needed by the customer, and can be released by the customer back to Tradesmen for reassignment for any or no reason, should the customer choose to do so. Tradesmen International, Inc. also operates a division of its business which provides skilled trade labor workers commonly known as "Travelers," who may or may not work out of an established Tradesmen Field Office to both its local Field Office Clients and its Clients designated as Project Support Clients.