E-FILED
Tuesday, 07 June, 2011 11:37:52 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
**Urbana Division**

| | |
|---|---|
| **TRADESMEN INTERNATIONAL, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No. 10-2098 |
| ) | |
| **PROFESSIONAL LABOR SUPPORT,** ) | |
| **LLC, et al.,** ) | |
| **Defendants.** ) | |

# O R D E R

In September 2010, Plaintiff Tradesmen International, Inc. (hereinafter "Tradesmen") filed a First Amended Complaint (#35) against Defendants Professional Labor Support, LLC, John Black, Todd Walker, Ryan Ellis, and Ryan Boyer. Among other claims, Tradesmen alleged that each of the individual defendants had violated his covenant not to compete with Tradesmen. In the complaint, Tradesmen requests declaratory judgment concerning the construction, validity, and enforceability of the agreements (hereinafter the "Non-Compete Agreements"). Federal jurisdiction is based on diversity pursuant to 28 U.S.C. §1332. The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. The parties agree that the Non-Compete Agreements are governed by Ohio law due to the presence of a forum selection clause in the contracts.

In February 2011, Defendants filed Defendants' Motion for Partial Summary Judgment (#49), seeking partial summary judgment on Plaintiff's request for declaratory judgment concerning the construction, validity, and enforceability of the Non-Compete Agreements.[1] At the time, parties had completed written discovery, but had not completed necessary depositions or other discovery. Tradesmen made a Motion for Extension of Time to Respond to Defendants' Motion for Partial Summary Judgment (#51) until further discovery could be completed. In order to possibly streamline discovery by resolving this issue, the Court denied Tradesmen's motion for extension (#53). In so doing, the Court noted it would only consider the facial

---

[1] This motion is filed by Defendants Black, Boyer, and Walker. Defendant Ellis and Defendant Professional Labor Support, LLC are not participants in this motion.

validity of the "Non-Compete Agreements," and that Tradesmen at this time need not address Defendants' purported "undisputed material facts" that do not bear directly on this issue. Accordingly, Tradesmen filed Plaintiff's Response in Opposition to Defendants' Motion for Partial Summary Judgment (#54). Defendants subsequently filed Defendants' Reply in Support of Motion for Partial Summary Judgment (#55). After reviewing the parties' pleadings and memoranda, this Court hereby **DENIES** Defendants' Motion for Partial Summary Judgment **(#49)**.

### I. Background

Given the procedural posture of this case, the Court relies only on the Non-Compete Agreements themselves and on undisputed material facts.[2] Tradesmen is a construction labor support company with a corporate office in Macedonia, Ohio. It hires and directly employs field employees in a complete range of manual and mechanical skilled trades, leasing its employees to clients in various construction, maritime, commercial, and industrial enterprises in the private and public sectors. Tradesmen's clients submit work orders to Tradesmen as needed, and the clients retain Tradesmen field employees to work on assignments for as long as their services are required. Tradesmen maintains 86 offices in 34 states.

Professional Labor Support, LLC is an entity formed by former Tradesmen employees, Defendants Black, Boyer, Walker, and Ellis. Tradesmen has alleged that, in operating this entity, the individual defendants have violated their Non-Compete Agreements. Each of the individual Defendants signed a non-competition agreement with Tradesmen at or near the time they started working with Tradesmen.[3]

---

[2]Tradesmen has indicated it agrees that the following paragraphs of Defendants' Motion for Partial Summary Judgment are undisputed material facts: (#49, ¶¶ 6-9; 12, 14, 27, 40, 103-110, 116-125, 127) (#54, p. 2).

[3]Defendant Black signed the Indianapolis Field Office Confidentiality and Non-Competition Agreement (#36, p. 8). Defendant Boyer signed the Field Representative Confidentiality and Non-Competition Agreement (#36, p. 8). Defendant Walker signed the Field Office Confidentiality and Non-Competition Agreement (#36, p. 18).

2

The Non-Compete Agreements contain geographic, temporal, and other restrictions on Defendants' ability to compete with Tradesmen after termination of their employment. The Non-Compete Agreements restrict the Defendants' competitive activities in three geographic spheres: (a) certain identified counties in Indiana and Ohio, which are different in each Defendant's contract, (b) within 100 miles of any field office of Tradesmen, and (c) within 25 miles of any location where Tradesmen is providing its services outside of the 100-mile field office restriction. The Non-Compete Agreements apply for 18-months after employees' termination. The Non-Compete Agreements also provide for non-piracy of customers or prospective customers, and protection of trade secrets, among other restrictions.

## II. Standard

The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material factual dispute exists that requires a trial. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). The party seeking summary judgment bears the initial burden of showing that no such issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). However, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex*, 477 U.S. at 322-23.

## III. Discussion

Defendants argue that they are entitled to summary judgment in their favor for two reasons: (1) the Non-Compete Agreements are not enforceable because they were made in consideration of the Defendants' employment with Tradesmen as "Field Representatives," but none of the Defendants still worked as a Field Representative at the time of their termination; and (2) the Non-Compete Agreements fail to meet the *Raimonde* standard of reasonableness.

3

*1. Binding Effect of Non-Compete Agreements*

Defendants argue that, by the clear and unambiguous terms of the Non-Compete Agreements, they were made in consideration of Defendants' employment as Field Representatives. Defendants argue that the Non-Compete Agreements are thus unenforceable, because all of the Defendants transferred to positions within the company prior to termination of their employment. Defendants submit:

> None of the Non-Compete Agreements purport to apply to other job positions that the Defendants held at Tradesmen, and none contains any provision that would allow the same restrictions to apply once the employee is promoted, transferred, or demoted from the position of field representative.

(#49, p. 19.)

Defendants' contention is simply not valid. The Non-Compete Agreements of Defendants Black, Boyer, and Walker all state:

> This Agreement shall continue in full force and effect if Employee accepts a position with the Company and shall continue in accordance with its terms, unless terminated in writing by the Company or superceded by Employee's execution of another Confidentiality and Non-Competition Agreement.

(#36, p. 5, ¶10; #36, p. 11, ¶10; #36, p. 22, ¶ 10.) Thus, by the plain language of the contracts, the agreements remained in effect when Defendants transferred positions. The Court therefore rejects Defendants' argument on this point.

*2. Reasonableness of Non-Compete Agreements*

Under Ohio law, a covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if: (1) it is no greater than is required for the protection of the employer; (2) it does not impose undue hardship on the employee; and (3) it is not injurious to the public. *Raimonde v. Van Vlerah*, 325 N.E.2d 544, 547 (Ohio 1975). The reasonableness of provisions of a non-compete agreement is a question of law. *Chi. Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 990 (6th Cir. 2007). A Court may consider numerous factors in determining the reasonableness of a covenant not to compete, including:

> [T]he absence or presence of limitations as to time and space; whether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant

4

> seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment of the employee; whether the covenant operates as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment.

*Raimonde*, 325 N.E.2d at 547 (citations omitted). Where a covenant not to compete is deemed unreasonable under *Raimonde*, it will be enforced only to the extent necessary to protect the employer's legitimate business interests. *Id*. A court, in its discretion, may modify provisions of the contract to make it reasonable and enforceable, or it may simply determine that the contract is void. *Prof'l Investigations & Consulting Agency, Inc. v. Kingsland*, 591 N.E.2d 1265, 1270 (Ohio App. 1990).

Defendants argue that the Non-Compete Agreements are unreasonable because they are greater than is required for protection of the employer, and they impose undue hardship on these Defendants.

*a. Not Required for the Protection of the Employer*

Defendants argue that certain provisions of the Non-Compete Agreements are greater than is required for protection of Tradesmen's legitimate interests. Specifically, Defendants argue that the Non-Compete Agreements are unreasonable with respect to geographic limits, scope of activity prohibited, and scope of customers and prospective customers that Defendants are prohibited from servicing.

*i. Geographic Limits*

Defendants argue two clauses of the Non-Compete Agreements containing geographic limitations are unreasonable. Defendants first argue the Non-Compete Agreements' prohibition on competition within 100 miles of any field office of the Company is unreasonable. Because Tradesmen has 86 offices in 34 states, Defendants argue that this provision has a nation-wide

effect on where Defendants can work, despite the fact that these Defendants only worked in Indiana and Ohio. Defendants argue that this is unreasonable and unenforceable.

Defendants note case law indicating that, where an employee's geographic sphere of customer contact is limited, an almost worldwide application of a noncompete agreement is unreasonably broad. *Lexis-Nexis v. Beer*, 41 F.Supp.2d 950, 957 (D.Minn. 1999) (applying Ohio law); s*ee also Nat'l Interstate Ins. Co. v. Perro*, 934 F.Supp. 883, 891 (N.D. Ohio 1996) (finding an employer received adequate protection when an employee is restrained from selling in his previous territory of customer contacts, where the employee had not made use of any confidential information). Tradesmen responds that the 100-mile limitation is not *per se* unreasonable. It argues that even non-compete agreements that are unlimited geographically have been found reasonable and enforceable by Ohio courts. *See, e.g., Klaus v. Hilb, Rogal & Hamilton Co.*, 437 F.Supp.2d 706, 734 (S.D. Ohio 2006) (holding a covenant not to compete that lacked geographic restrictions was enforceable because it contained customer restrictions instead). As such, Tradesmen contends that the reasonableness of the 100-mile limitation is beyond the scope of this Court's present review of the facial validity of the Non-Compete Agreements.

Here, Tradesmen has alleged that Defendants not only had customer contacts necessitating the geographic restrictions for Tradesmen's protection, but also that Defendants had knowledge of trade secrets and other confidential information that made the restrictions reasonable. Tradesmen's legitimate need for protection is thus not adequately addressed by Defendants' cited authority: All but one of the cases cited by Defendants on this point deal with salesmen, and covenants not to compete that extend past a salesman's customer base.[4]

---

[4]See *Lexis-Nexis v. Beer*, 41 F.Supp.2d 950 (D. Minn. 1999) (holding a noncompete agreement with an almost wordwide application is unreasonable, where the defendant was a salesman assigned specific territory); *Nat'l Interstate Ins. Co. v. Perro*, 934 F.Supp. 883 (N.D. Ohio 1996) (holding an employer received adequate protection when its former employee, an insurance salesman, was restrained from selling in his previous territory). *Guardian Warranty v. Bulger*, No.1:07CV235, 2007 WL 1362757 (S.D. Ohio, May 8, 2007), *Patio Enclosures Inc. v. Herbst*, 39 Fed. Appx. 964 (6th Cir. 2002) and *Prof'l Investigations & Consulting Agency, Inc. v.*

Defendants' cited authority is thus distinguishable from the present case, in which Defendants all allegedly worked as General Managers prior to their termination of employment, and may have had knowledge, responsibilities, and training beyond that of salesmen. (#35, ¶¶ 4-7). Moreover, such evaluation of Defendants' exact job responsibilities is beyond the scope of this Court's present inquiry. Therefore, this Court agrees with Tradesmen that the 100-mile limitation is facially valid, and any further inquiry is beyond the scope of this Court's present review of the facial validity of the Non-Compete Agreements.

Second, Defendants argue that the Non-Compete Agreements' provision prohibiting competition "within [25 miles] of any location at or to which the Company is providing its services outside of the [100 miles referenced in the prior sub-section]" is facially invalid. (#36, p. 2; #36, p. 9; #36, p. 19). Defendants believe that this restriction is intended to refer to customer job sites where Tradesmen's skilled labor field employees are placed to provide work for customer accounts. The problem is that Defendants claim not to know where these job sites are located. Defendants argue that even if they did have this knowledge, the contract provision creating restrictions based on where Tradesmen "is providing services" provides no clarification regarding what point in time this phrase is intended to refer to. They submit the provision is thus indeterminate and unenforceable.

The issue may be analyzed in the *Raimonde* framework: Does the indeterminate language of the this provision make enforcement of the provision unreasonable? Defendants cite *Prof'l Investigations & Consulting Agency, Inc. v. Kingsland*, 591 N.E.2d 1265 (Ohio App. 1990). In that case, a former employee had entered into a covenant not to compete, prohibiting him from soliciting or selling to "past or present customers" of the employer, determined at the date of the termination of employment. *Id.* at 1267. However, the employer did not provide any

---

*Kingsland*, 591 N.E.2d 1265 (Ohio App. 1990) also deal with former employees who directly sold and/or provided services to customers. In one case cited by Defendants that involves a regional manager, the court found a noncompete agreement was unreasonable as applied to the former employee because his employment had only lasted seven months. *Am. Bldg. Serv., Inc. v. Cohen*, 603 N.E.2d 432 (Ohio App. 1992).

7

client list to the former employee until litigation was well underway. *Id.* at 1269. The defendant was thus not aware of the extent of the non-competition clause until after he had already allegedly violated it. This was one of several reasons that the appellate court upheld the trial court's determination that the covenant not to compete was unenforceable. *Id.*

This Court notes that the same potential unfairness could exist in this case. Like the defendant in *Kingsland*, these Defendants may not have any way of knowing what geographic areas are affected by the contract provision applying to 25-miles of where Tradesmen "is providing its services." However, this is not a case where the language of the contract is indeterminate and must be void due to facial invalidity. Defendants note that all of them believe this specific geographic restriction is intended to refer to a customer job site where Tradesmen's skilled labor field employees are placed and providing work for a customer account. (#49, p. 23). This indicates that the clause has meaning to the parties, and that the parties agreed to essential terms.[5] The meaning of the contract language is thus sufficiently clear to survive a challenge to its facial validity. It is not simply incoherent or unintelligible. *Compare Unisource Worldwide, Inc. v. Carrara*, 244 F.Supp.2d 977, 982 (C.D. Ill. 2003) (invalidating non-competition agreement on the basis that it was unintelligible and did not reflect an agreement as to its essential terms).

Thus, depending on the circumstances, it may not be reasonable under the *Raimonde* framework to enforce a provision against Defendants who have know way of knowing how to comply with it. Here, the question of reasonableness turns on Defendants' knowledge of where and when Tradesmen provided its services. This is beyond the scope of this Court's present review. As such, the Court cannot conclude that the 25-mile provision is *per se* unreasonable.

---

[5] *See Nilavar v. Osborn*, 711 N.E.2d 726, 734 (Ohio App. 1998) (stating essential terms of a contract not for goods are parties and subject matter of the contract); *Mr. Mark Corp. v. Rush, Inc.*, 464 N.E.2d 586, 589 (Ohio App. 1983) (stating a court will enforce a contract if it encompasses essential terms, and will resolve omitted less central subjects).

*ii. Scope of Activity*

Defendants contend that the Non-Compete Agreements are unreasonable because the scope of prohibited activity is unreasonably broad. The clause at issue states that Employees may not "own, maintain, operate, engage in, be employed by, consult or contract with . . . or have any business interest which is competitive to the 'Business of the Company.'" (#36, p. 3; #36, p. 19; p. #36, p. 9 [using slightly different language]). "Business of the Company" is defined as follows:

> [T]he temporary or long-term placement of personnel, including laborers and skilled tradespersons, in the commercial, industrial and residential construction or maintenance industry and dry dock vessel construction, repair, maintenance, refurbishing, in the marine industry and as further described in Exhibit 'A' attached hereto.

(#36, p. 4; #36, p. 21; see also #36, p. 9.)[6] Exhibit A defines Tradesmen's business. Exhibit A states that Tradesmen is a construction labor contracting company which provides laborers and skilled trades persons and safety related products to companies or individuals who require their services. The exhibit contains some further detail, which the Court will not repeat here.

Defendants contend that this definition effectively prohibits a broad range of employment options for Defendants. They argue it extends beyond a prohibition on provision of labor in the skilled trades, which is Tradesmen's core business activity, particularly because it prohibits Defendants from being 'employed by' competitors, and it prohibits Defendants from having "any interest in" any business which is competitive to the company. Tradesmen responds that Defendants' characterization is not accurate. Tradesmen cites *Avery Dennison Corp v. Kitsonas*, 118 F.Supp.2d 848, 853 (S.D. Ohio 2000) for the proposition that provisions prohibiting employees from being employed by competitors are not facially invalid.

---

[6]Defendant Boyer's contract does not contain this exact language. It refers to the 'business of the company,' but relies on a similar Exhibit A, rather than including the language in the contract.

The Court agrees with Tradesmen that a prohibition on being employed by a competitor is not facially invalid. Moreover, the Court notes that a core component of Tradesmen's complaint is that Defendants allegedly directly own, maintain, and operate a business that is competitive to the "Business of the Company." (#35, p. 2) (alleging Defendants formed a competing entity). The enforceability of the particular prohibition "be employed by," on which Defendants' argument is based, is thus largely irrelevant. Defendants characterize their business as a "skilled labor staffing business." (#49, p. 29.) This fits squarely within the Tradesmen's "Business of the Company" definition. Responding to arguments concerning the outer parameters of the prohibited scope of activity would be a merely intellectual exercise. Furthermore, the definition of the Business of the Company, written above, appears on its face to be reasonably narrow and specific. The Court thus concludes that the provisions pertaining to the prohibited scope of activity are not facially invalid.

*iii. Scope of Customers and Prospective Customers*

The Non-Compete Agreements prohibit piracy of and interference with "any Customer or Prospective Customer." A "Customer" is defined as follows:

> [A]ny person or entity (i) to whom Employee provides services as an Employee of the Company; (ii) to whom services were provided by any other Company employee that the Employee, directly or indirectly, managed or supervised at any time during Employee's employment with the Company; (iii) to whom the Company provided services during Employee's employment with Company, or (iv) who has executed a Client Services Agreement pursuant to which it is entitled to request and receive the Company's services.

(#36, p. 3; #36, p. 20.)[7]

---

[7] Defendant Boyer's contract does not contain a definition of "Customers." Its provisions pertaining to piracy and interference with customers are worded differently. Because Defendants' arguments in their motion pertain to the contract language the versions signed by Defendants Black and Walker, this Court does not address any particularities of Defendant Boyer's contract.

A "Prospective Customer" is defined as follows:

[A]ny person or entity (i) whom the Employee; (ii) any other Company employee; (iii) the company had solicited; or (iv) made a proposal for the purposes of providing the person or entity its services.

(#36, p. 3; #36, p. 20-21.)[8]

Defendants argue these provisions are unreasonable for two reasons. First, Defendants contend these provisions pertain to customers and potential customers with whom Defendants never had any contact. Defendants cite case law in which limitations on contact with customers with whom the defendant had no relationship were found unreasonable and unenforceable. *See Guardian Warranty v. Bulger*, No.1:07CV235, 2007 WL 1362757 (S.D. Ohio, May 8, 2007). Second, Defendants contend that these provisions should be stricken because they are indeterminate. This is essentially the same problem discussed above, with respect to potential indeterminacy of the 25-mile geographic restriction. Defendants indicate they have no way of knowing who Plaintiff's customers and prospective customers are, and so they cannot know the scope of their Non-Compete Agreements. *See Prof'l Investigations & Consulting Agency, Inc. v. Kingsland*, 591 N.E.2d 1265 (Ohio App. 1990) (striking a provision for indeterminacy). Defendants additionally note that the definition of "Prospective Customer" is incoherent; there is no obvious relationship among the four subprovisions contained in the definition. *See Unisource Worldwide, Inc. v. Carrara*, 244 F.Supp.2d 977 (C.D. Ill. 2003) (striking a provision for incoherence).

Tradesmen responds that Defendants have improperly procured trade secrets, including client and prospective client lists. Tradesmen notes that a court may consider an employer's need to protect trade secrets and customer lists in assessing the reasonableness of a non-compete agreement, citing *R.W. Taylor Assocs., Inc. v. Gelrad, LLC*, No. 5:10CV256, 2010 WL 3431166 (N.D. Ohio, May 14, 2010). Tradesmen does not address the issue of the incoherent language of the definition of Prospective Customer.

---

[8]Defendant Boyer's contract does not refer to "Prospective Customers."

11

First, with respect to the provision on "Customers," this Court notes that the reasonableness of the definition of Customer may turn on what legitimate business interest Tradesmen seeks to protect. A prohibition on piracy or interference with customers may be reasonable, depending on the circumstances, even if Defendants had no contact with those customers. This issue turns on what legitimate business interest Tradesmen sought to protect, and whether Defendants' work as General Managers reasonably merits this prohibition. Also, the potential indeterminacy of the definition of Customer does not make the provision *per se* unreasonable. As discussed above with respect to the 25-mile geographic limitation, the reasonableness of this provision turns on Defendants' knowledge of the list of Tradesmen's customers. As such, this Court concludes that the Non-Compete Agreements are not *per se* unreasonable as they relate to Tradesmen's Customers, as defined in the agreements.

Second, with respect to the provision on "Prospective Customers," Defendants note the definition consists of sentence fragments with no explicit indication of how they are linked. Defendants argue this makes the provision unenforceable due to incoherence. However, despite these grammatical flaws, there is really only one possible meaning: Prospective Customers are those persons or entities to which the Employee, other employees of the Company, or the company have made solicitations or have made a proposal for the purpose of providing the person or entity the Company's services. Thus, while the definition of Prospective Customers is not well constructed, this Court finds it is not incoherent. The Court concludes the provisions pertaining to Prospective Customers are enforceable, to the extent they are reasonable in light of the facts and circumstances.

For these reasons, this Court concludes that the provisions pertaining to non-piracy and non-interference with Customers and Prospective Customers are not facially invalid.

*b. Undue Hardship*

Defendants argue that the Non-Compete Agreements impose undue hardship on them. Defendants state that they have made tremendous sacrifice in an effort to start their own business and compete fairly in the skilled labor staffing business. Defendants note that two of them were

12

terminated involuntarily, and they opened business in another state, forcing them to frequently be away from their families.

All of these facts are beyond this Court's present review. Under *Raimonde*, this Court can consider whether the benefit to the employer is disproportional to the detriment of the employee, and whether the covenant operates as a bar to the employee's sole means of support. *Raimonde v. Van Vlerah*, 325 N.E.2d 544, 547 (Ohio 1975). These factors are germane to Defendants' argument, and are appropriate to consider in a later motion or at trial. However, these factors are factual inquiries, and the Court will not undergo these inquiries at this time.

### IV. Summary

For the reasons discussed above, this Court **DENIES** Defendants' Motion for Partial Summary Judgment **(#49)**.

ENTER this 7th day of June, 2011.

                                                      s/ DAVID G. BERNTHAL
                                                     U.S. MAGISTRATE JUDGE