**UNITED STATES  DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | | |
|---|---|---|
| TRADESMEN INTERNATIONAL, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No.  10-2098** |
| | ) | |
| JOHN BLACK, et al., | ) | |
| **Defendants.** | ) | |

# ORDER

Plaintiff Tradesmen International, Inc. filed a First Amended Complaint (#35) against Defendants in September 2010.  Defendants are Professional Labor Support, LLC, and John Black, Todd Walker, Ryan Ellis, and Ryan Boyer.  Plaintiff brought ten counts against Defendants, alleging breach of contract, misappropriation of trade secrets, and other related claims.  Federal jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In June 2011, Defendants filed a Motion for Summary Judgment (#62).[1]  In July 2011, Plaintiff filed Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (#66).  Defendants filed Defendants' Reply Memorandum in Support of Motion for Summary Judgment (#78).  After reviewing the parties' pleadings, memoranda, and submitted evidence, this Court hereby **GRANTS** Defendants' Motion for Summary Judgment **(#62)** in part and **DENIES** the motion in part.  For the reasons explained below, the Court grants Defendants' motion for summary judgment with respect to all counts, with the exception of Count IV. Count IV is dismissed as moot.

## I. Background

The following background information is taken from the undisputed facts, as well as evidence submitted to the Court.

---

[1]Defendant Ellis did not join in this motion, and the proceedings against him are stayed. Where the Court refers to "Defendants," it only refers to the Defendants participating in this motion.

Plaintiff Tradesmen International, Inc. is a construction labor support company with a corporate office in Macedonia, Ohio. It hires and directly employs field employees in skilled trades. Tradesmen leases these employees to clients in temporary need of skilled labor. (#62, ¶¶ 1-2). Tradesmen has offices located throughout the country.

Each of the individual Defendants is a former employee of Tradesmen. Each Defendant began his career at Tradesmen as a Field Representative, and each Defendant eventually became a General Manager. (#62, ¶¶ 12, 20, 27). Defendants Black, Boyer, and Walker worked for Tradesmen for two, eight, and four years, respectively. (#62, ¶¶ 10, 18, 25). Each Defendant signed a covenant not to compete (hereinafter "CNTC") before or shortly after commencing his employment with Tradesmen. The contracts provide that, for 18 months after the end of their employment with Tradesmen, the Defendants would not compete in a certain geographically restricted area. That area was defined in three respects: (a) certain identified counties, (b) within 100 miles of any Tradesmen field office, (c) within 25 miles of any location where Tradesmen "is providing its services." (#62, ¶ 39). The contract also provided that, within the geographically restricted area, Defendants would not transact business with Tradesmen customers or prospective customers, would not interfere with customers or prospective customers, and would not solicit or hire Tradesmen employees. (#62, ¶¶ 48-56; #62-4, Exs. 11-13). Finally, the contract provided that the Defendants would not disclose or use any of Tradesmen's proprietary information for any reason other than to benefit Tradesmen. (#62-4, Exs. 11-13).

The trouble here began in October 2009. Tradesmen asked Black to take a demotion, from General Manager to Project Coordinator. Because Black was not willing to accept the demotion, he either resigned or was terminated. (#62, ¶¶ 16-17). Defendants admit that from October 2009 to January 2010, Defendants prepared to open a business providing some of the same services as Tradesmen. In November 2010, Defendants went so far as to sign an office and apartment lease for their new business. (#66, ¶¶ 197-200; 201-15). In January 2010, Tradesmen discovered Defendants' plan, and Defendants Walker and Boyer either were terminated or resigned from Tradesmen. (#62, ¶¶ 24-25).

2

Before leaving Tradesmen, on January 4, 2010, Defendant Walker sent five e-mails with "Modified D&B Reports" attached to his personal e-mail account. This action is the basis for a number of claims against all Defendants. However, it is unclear if or when the other Defendants knew of this action. At some point in late January, either Defendant Black or Defendant Walker deleted these e-mails, at Defendant Black's suggestion. (#62, ¶¶ 129-44; 147-53). These "Modified D&B Reports" are used by Tradesmen to identify potential customers. They are broken down by zip code. Tradesmen gets D&B Reports for various areas on a regular basis, and often modifies them in-house to narrow the pool of prospective clients to solicit. (#62-3, Ex. 5, p. 18-20.)

In October 2009, the Defendant Black officially formed a new business, Professional Labor Support, LLC (hereinafter PLS), a Defendant in this case. (#62, ¶ 66). Defendants Boyer and Walker joined PLS in January 2010, after their employment with Tradesmen ended (#62, ¶¶ 67, 69; #66, ¶ 67 [*partially disputed*]).[2] The idea, according to Defendants, was to compete with Tradesmen in a manner that would not violate the CNTCs. (#62, ¶¶ 74-75; #66, ¶¶ 74-75 [*disputed*]). Defendants opened PLS in Mahomet, Illinois, more than 100 miles away from any Tradesmen field office. (#62, ¶ 75; #66, ¶ 75; #62-2, Ex. 4; *but see also* #66, ¶¶ 243-44). Defendants turned down several opportunities to do business with clients they first encountered through their work at Tradesmen. (#62, ¶¶ 79-86.)

Around March 2010, PLS became fully operational. It started making sales, recruiting field employees, and actively conducting business. (#62, ¶ 71). PLS indisputably provided services to at least one Tradesmen client, TCR Systems, LLC. (#62, ¶ 94, #66, ¶¶ 280).[3] However, on February 7, 2011, in response to discovery in this case, Tradesmen provided

_____

[2]Throughout this opinion, where the Court makes reference to a fact that is in dispute, it cites to Defendants' motion and Plaintiff's response with respect to that fact.

[3]In its complaint, Plaintiff also identified Motorsport Construction as a "stolen" client. However, Plaintiff has admitted that no one at PLS ever solicited or sought any business from Motorsport. (#62, ¶¶ 103-06).

Defendants a list of customers "we believe are covered by the restrictions at issue" (hereinafter the "Restricted Client List"). (#62, ¶ 91; #62-6, Ex. 24). This list contains over 2,600 customers or prospective customers. (#62, ¶ 93). On the same date, Plaintiff provided a list of its "specific offices covered by Defendants' Non-Compete Agreements" (hereinafter the "Restricted Office List.") (#62, ¶ 89; #62-6, Ex. 24). TCR Systems is not on the Restricted Client List. (#62, ¶ 96). It does not appear that any of PLS's customers are on the Restricted Client List.

The plot thickens in January 2011. In January 2011, Defendant Ellis's term for his CNTC expired. Defendant Ellis organized a separate limited liability company in Indiana called PLS of Indiana, LLC (hereinafter "PLS Indiana"). (#66, ¶ 265). When Defendant Black's CNTC term expired in April 2011, he left PLS, gave up his interest, and joined PLS Indiana (#66, ¶ 269). Plaintiff notes that Defendant Boyer also considered leaving PLS to join PLS Indiana as soon as the term for his CNTC expired, in July 2011. (#66, ¶ 270). PLS Indiana has clients in common with Tradesmen, including Stickle Steam, Biehle Electric, and Forrester Electric (#66, ¶ 287; #62, ¶¶ 124-28; #66, ¶¶ 124-28 [*disputed as to whether these clients are also clients of PLS*]).

Based on these events, Plaintiff brings ten counts against Defendants: (1) breach of contract, (2) misappropriation of trade secrets, (3) misappropriation of confidential information, (4) declaratory judgment regarding enforceability of the CNTCs, (5) permanent injunctive relief, (6) breach of the duty of loyalty, (7) tortious interference with contractual relations, (8) tortious interference with business expectancy, (9) conversion, and (10) civil conspiracy.

## II. Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material factual dispute exists that requires a trial. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). A factual dispute is material only if its resolution might affect the outcome of the suit under governing law. *Id.* The party seeking summary judgment bears the initial burden of showing that no such issue of material fact exists.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Furthermore, the Court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). However, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex*, 477 U.S. at 322-23.

### III. Discussion

In the following discussion, the Court will first address several preliminary issues: choice of law, preemption, and whether there are genuine issues of material fact precluding summary judgment. Then, the Court will address Defendants' arguments presented in its motion for summary judgment.

*A. Preliminary Issues*

As a preliminary matter, this Court will address choice of law issues and preemption. Parties did not raise these matters, but the Court nevertheless considers them to ensure that the proper law is followed, and the relevant public policy is not circumvented. Additionally, the Court will consider whether any genuine issues of material fact preclude summary judgment.

*1. Choice of Law*

First, the Court will address choice of law. The parties do not explicitly discuss choice of law, though both parties predominantly cite Ohio authority. The CNTCs contain a forum selection clause, expressing that the contracts are to be governed by Ohio law. Nevertheless, despite the presence of a forum selection clause in the contract, the Court must consider which state has the most significant relationship to Plaintiff's tort claims.[4] *See Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 865 (7th Cir. 2010) (stating that Illinois, the forum state, uses the "most significant relationship" test to determine choice of law for tort claims). For torts,

_____

[4]The relevant contract provision merely states "The Agreement shall be deemed to be made under and shall be construed in accordance with the laws of the State of Ohio." (#62-4, Exs. 11-13). It has no bearing on the tort claims.

5

the state with the most significant relationship to a claim is presumably the state where the injury occurred. *Id.* In cases involving misappropriation of confidential information or trade secrets, Illinois applies the law of the state "where the alleged wrong was committed or the benefit was obtained." *Maine v. Standard & Poor's Corp.*, 918 F.2d 959 (7th Cir. 1990) (citing *Goldberg v. Medtronic, Inc.*, 686 F.2d 1219, 1225 (7th Cir. 1982)).[5]

Here, Plaintiff is an Ohio corporation, Defendants primarily worked for Plaintiff in Indiana, and then Defendants opened a new business in Illinois. The tort claims in this case are mainly related to misappropriation of trade secrets and confidential information, specifically involving a Defendant, while employed in Indiana by Plaintiff, allegedly e-mailing himself proprietary information to benefit his new business, operating in Illinois. The Court notes that, under these facts, Illinois is the state where any benefit of Defendants' misappropriation was obtained. In any event, choice of law does not affect the outcome of this motion. The states of Illinois, Indiana, and Ohio have each adopted the Uniform Trade Secrets Act, which guides the Court's determination of Plaintiff's tort claims. 765 ILCS 1065; Indiana Code § 24-2-3; Ohio Revised Code § 1333.61. Where there is no conflict of law, the law of the forum state may be applied. *Sphere Drake Ins. Ltd v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 671 (7th Cir. 2004). For these reasons, this Court applies Illinois law to Plaintiff's tort claims.

*2. Preemption*

Second, the Court will consider whether any or all of Plaintiff's common law tort claims are preempted by the Illinois Trade Secrets Act. The Court has requested supplemental briefing on this issue, which the parties have submitted (#83, #84).[6]

---

[5]In *Maine* and *Goldberg*, the Seventh Circuit elected to use the law of the state where the defendant based the competing business.

[6]Regrettably, the Court determined that Illinois law should apply to the tort claims after requesting supplemental briefing from parties with respect to preemption under Ohio law. Nevertheless, parties' analysis regarding the preemption issues is still largely valid, as the law under both states establishes that common law claims are preempted to the extent they are based solely on allegations of misappropriation of trade secrets or other confidential information.

The Illinois Trade Secrets Act provides that the statute displaces conflicting tort, restitutionary, and other laws providing civil remedies for misappropriation of a trade secret. 765 ILCS 1065/8(a). This provision does not affect contractual remedies, other civil remedies that are not based on misappropriation of a trade secret, or criminal remedies. 765 ILCS 1065/8(b). As a result of this provision, claims are foreclosed when they rest on the conduct that is said to constitute misappropriation of trade secrets. *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404-05 (7th Cir. 2005). However, the provision does not preempt duties imposed by law that are not dependent upon the existence of competitively significant secret information, such as an agent's duty of loyalty. *Id.*

Plaintiff's claim for misappropriation of trade secrets is based on harm resulting from Defendant Walker e-mailing himself Plaintiff's proprietary D&B Reports. (#62, ¶ 129). Plaintiff has admitted that this group of reports is the only trade secret at issue in this case. (#62, ¶ 129). Several of Plaintiff's common law tort claims are based, in whole or in part, on this same injury. Specifically, Plaintiff has alleged that Defendants breached their duty of loyalty "by misappropriating confidential business information during their employment in order to compete with Tradesmen." (#35, p. 20, ¶ 91). In Plaintiff's response brief, Plaintiff further relies on the theory that Defendant Walker breached a duty of loyalty by e-mailing himself D&B Reports. Similarly, in Plaintiff's claim for conversion, Plaintiff alleges that the Defendants "wrongfully and without authorization removed information from Tradesmen's computers that constitutes intellectual property of Tradesmen." (#35, p. 22, ¶ 105). Last, in Plaintiff's claim for civil conspiracy, one basis for this claim is the allegation that Defendants conspired to "misappropriate . . . confidential and proprietary business information." (#35, pp. 22-23, ¶ 108).

Based on the forgoing, the Court concludes that several of Plaintiff's claims are at least partially preempted by the Illinois Trade Secrets Act. Plaintiff's claim for conversion is entirely based on the same conduct as the alleged misappropriation of trade secrets, and so the Court

---

*Compare Rogers Indus. Prods. Inc. v HF Rubber Mach. Inc.*, 936 N.E.2d 122, 130 (Ohio Ct. App. 2010); *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404-05 (7th Cir. 2005).

holds that Count IX is preempted in its entirety. The Court grants Defendants' motion for summary judgment as to Count IX. Plaintiff's claims for misappropriation of confidential information, breach of duty of loyalty, and civil conspiracy are based in part on the same conduct as the alleged misappropriation of trade secrets. The Court holds that these claims are preempted only to the extent they rely on the misappropriation of trade secrets. The Court will return to these claims below.

### 3. Genuine Issues of Material Fact

Parties largely agree on material facts of this case. However, there are three topics on which parties dispute material facts. First, parties dispute whether Defendant Boyer's job responsibilities at Tradesmen involved service to Central Illinois. (#62, ¶¶ 22-23; #66, ¶¶ 22-23). Second, parties dispute the nature of the relationship between Defendant PLS and PLS of Indiana. Plaintiff contends that the entities share clients, such that any clients of PLS Indiana may be considered clients of Defendant PLS in determining whether Defendants have breach their CNTCs. (#62, ¶¶ 4, 6, 113-14, 124-28; #66, ¶¶ 4, 6, 113-14, 124-28). Third, parties dispute the nature of PLS's interaction with Stickle Steam and TCR Systems, Inc., two clients that Defendants allegedly diverted from Plaintiff in violation of their CNTCs. (#62, ¶¶ 97, 99, 115, 118-20; #66, ¶¶ 97, 99, 115, 118-20). Plaintiff further argues that summary judgment is not appropriate in this case because the circumstances of this case call for a finder of fact to assess the credibility of certain evidence presented.

All of these material disputed facts, and determination that may entail assessment of parties' credibility, concern whether Defendants breached their CNTCs. This Court does not reach the issue of whether Defendants breached their CNTCs, for the reasons discussed below. Therefore, these genuine issues of material fact do not preclude summary judgment.

### B. Arguments

Having addressed the preliminary issues, the Court now turns to the arguments raised by the parties. The Court will first address Defendants' arguments that relate to Plaintiff's contract claims, including Count I for breach of contract, Count V for injunctive relief, and Count IV for

declaratory judgment. Then, the Court will address Defendants' arguments that relate to Plaintiff's remaining tort claims.

*1. Damages*

Defendants argue that they are entitled to summary judgment in their favor on all of Plaintiff's claims for which proof of damages is an essential element. Defendants argue that Plaintiff has failed to disclose any computation of damages, and that throughout discovery they have not provided evidentiary support of damages.

In Tradesmen's Rule 26 disclosures, Tradesmen stated that its damages include (1) salaries and benefits paid to Defendants while they were in breach of their duty of loyalty to Tradesmen, (2) compensatory damages in the value of business lost because of the Defendants' breach of contract and tortious activities, (3) compensatory damages equal to the amount expended by Tradesmen in developing confidential trade secret information that lost its value because of Defendants' misappropriation, and (4) punitive damages. (#62-13, Ex. 43). Here, the Court will assess the adequacy of Plaintiff's evidence establishing compensatory damages.

First, Plaintiff seeks compensatory damages for the value of business lost due to Defendants' breach of contract and tortious activities. Proof of damages is an essential element of a claim for breach of contract. *Jarupan v. Hanna*, 878 N.E.2d 66, 73 (Ohio Ct. App. 2007). Proof of resulting damages is also an essential element of Plaintiff's burden of proof for claims for tortious interference with contractual relations and tortious interference with a business expectancy. *Allstar Music, Inc., v. Eckhoff*, 629 N.E.2d 816, 821 (Ill. App. Ct. 1994); *Botvinick v. Rush Univ. Med. Cntr.*, 574 F.3d 414, 417 (7th Cir. 2009) (citing *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991)).

As evidence of lost profits, Plaintiff has submitted gross sales figures for certain clients that Plaintiff claims Defendants solicited and provided services to in violation of their CNTCs. (#66, ¶¶ 294-95). Plaintiff has also submitted sales figures for Defendant PLS. (#66, ¶¶ 284-85, 290, 292). Defendants argue that these gross figures are not adequate to establish lost profits.

[I]n order for a plaintiff to recover lost profits in a breach of contract action, the amount of lost profits, as well as their existence, must be demonstrated with reasonable certainty . . . . Lost profits may be established with reasonable certainty either directly or through an expert witness. Proof with mathematical precision is not required, nor need the proof be clear and irrefutable, but profit loss cannot be left to mere conjecture and must be capable of measurement based upon known reliable factors without undue speculation.

*Cobblestone Square II Co., Ltd. v. L&B Food Servs. Inc.*, No. 95968, 2011 WL 4389918, *5 (Ohio Ct. App., Sept. 22, 2011) (quoting *Gahanna Eastgate Props., Inc.,* 521 N.E.2d 814 (Ohio 1988) and *Mich. Millers Mut. Ins. Co*. *v. Christian*, 794 N.E.2d 68 (Ohio Ct. App. 2003)).

The evidentiary issues with respect to Plaintiff's claim for lost profits are highlighted by the deposition of Plaintiff's Rule 30(b)(6) designee. A relevant portion of the deposition transcript reads as follows:

Q: And are these two documents (*referring to exhibits with gross sale for two clients*) something on which Tradesmen would rely to claim or compute its lost business damages from Professional Labor Support or the defendants in this case?
A: Yes.
. . .
Q: What's the company's position on how these two documents support its claim for lost business damages?
. . .
A: I don't know.
Q. Do these two documents show a computation of any lost business damages that Tradesmen is claiming against Professional Labor Support or any of the defendants?
A. I don't know.

(#62-3, Ex. 5, p. 10). In continued questioning, Plaintiff's Rule 30(b)(6) designee could not explain the relevance of documents produced by Plaintiff in discovery, could not offer any explanation for how its evidence would enable Plaintiff to compute lost business damages, and could not identify any other documents which had not yet been provided in discovery that could support a claim against any of the defendants in this case for lost business damages. (#62-3, Ex. 5, p. 10-12; *see also* #62, ¶¶ 160, 170-75; 177-82).

This Court concludes that Plaintiff's evidence on lost profits is insufficient to carry Plaintiff's burden of proof on damages. Extrapolating lost profits from Plaintiff's evidence, which details only gross sales to certain clients, would require undue speculation. Profit loss cannot be left to mere conjecture and must be capable of measurement based upon known reliable factors. *Cobblestone Square II Co.*, 2011 WL 4389918, at *5. Plaintiff has not provided any method of measuring lost profits, and has not identified any known reliable factors which may be used to extrapolate lost profits from gross sales figures submitted in evidence. This Court therefore concludes that Plaintiff is unable to prove lost profits.

Second, Plaintiff seeks compensatory damages equal to the amount expended by Tradesmen in developing confidential trade secret information that lost its value because of Defendants' misappropriation. Under the Illinois Trade Secrets Act, Plaintiff may recover "both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." 765 ILCS 1065/4. Or, in lieu of these damages, a plaintiff may seek a royalty in an amount that is equitable under the circumstances. *Id.*

In the circumstances of this case, Plaintiff is unable to prove actual loss caused by misappropriation for the same reason it is unable to show lost profits. The misappropriated trade secret, in this case, concerns Defendants' alleged misappropriation of "Modified D&B Reports," which are used by Plaintiff to identify, solicit, and establish new clients. Plaintiff alleges that the Modified D&B Reports lost value due to Defendants' misappropriation because it enabled Defendants to steal potential clients, and thus steal profits, from Tradesmen. However, where any evidence as to claimed lost profits is too speculative to support an award, a plaintiff seeking damages for misappropriation of trade secrets may be limited to the remedy of an equitable royalty. *Nilssen v. Motorola, Inc.*, No. 93 C 6333, 1998 WL 513090, *15 (N.D. Ill. Aug. 14, 1998) (citing *Vermont Microsystems, Inc. v. Autodesk, Inc.*, 88 F.3d 142 (2d Cir. 1996)); *see also Hours, Inc. v. Swartz*, No. L-06-1077, 2007 WL 867103, *6 (Ohio Ct. App. Mar. 6, 2007) (stating "the award [for misappropriation of trade secrets] cannot be based on a gross revenue amount."). As such, showing actual loss caused by misappropriation would require the same

type of evidence as what would be needed to show lost profits. As this Court has already noted, Plaintiff has only provided gross sale figures. Furthermore, Plaintiff has admitted that it does not know the amount of any lost development costs, and it does not know the basis for computing development costs associated with the Modified D&B Reports. (#62, ¶¶ 184-85). The Court finds that extrapolating actual loss caused by misappropriation from gross sale figures would be unduly speculative.

Because this Court has concluded that Plaintiff cannot prove its damages for lost profits or for actual loss caused by misappropriation, the Court holds that Plaintiff has not established that it has suffered consequential damages. Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the facts. *Johnson v. Cambridge Indus. Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Due to Plaintiff's failure to provide evidence establishing consequential damages, Defendants are entitled to summary judgment on every count for which resulting damages is an essential element.

As such, this Court grants summary judgment in favor of Defendants with respect to Count I for breach of contract, Count VII for tortious interference with contractual relations, and Count VIII for tortious interference with a business expectancy.

*2. Injunctive Relief*

In its request for permanent injunctive relief, Plaintiff asks the Court to impose the following orders on Defendants: (1) compel them to comply with their obligations under the CNTCs; (2) enjoin them from disclosing confidential and proprietary information; (3) enjoin them from soliciting Plaintiff's customers; (4) enjoin them from competing with Plaintiff for 18 months from the date of the Court's order; and (5) enjoin them from disclosing trade secrets. In essence, Plaintiff asks the Court to grant it injunctive relief enforcing the terms of the CNTCs. Plaintiff argues that "this Court's equitable power to enjoin Defendants from engaging in conduct that violates the terms of their non-compete agreements does not end" merely because the 18-month term of Defendants' CNTCs has expired in the course of this litigation. (#66, p.

25).  Plaintiff cites *Rogers v. Runfola & Assocs., Inc.*, 565 N.E.2d 540, 544 (Ohio 1991) for the proposition that a court may impose injunctive relief enforcing terms from a covenant not to compete even though the restrictive period, by its own terms, has expired.

An award of a permanent injunction in a diversity case is governed by the appropriate state's substantive law.  *Dunkin' Donuts, Inc. v. N.A.S.T., Inc.*, 428 F.Supp.2d 761, 775 (N.D. Ill. 2005).  Under Ohio law, a plaintiff seeking injunctive relief must demonstrate that there is no adequate remedy at law.  *Mid-America Tire, Inc. v. PTZ Trading Ltd.*, 768 N.E.2d 619, 631 (Ohio 2002).  An adequate remedy at law "means that the legal remedy must be as efficient as the indicated equitable remedy would be; that such legal remedy must be presently unavailable in a single action; and that such remedy must be certain and complete.  *Id.* at 632 (citing *Fuchs v. United Motor Stage Co., Inc.*, 21 N.E.2d 669 (Ohio 1939)).  Furthermore, to obtain permanent injunctive relief, a plaintiff must demonstrate that failure to issue the injunction is likely to result in irreparable harm.  *United States v. Miami Univ.*, 294 F.2d 797, 816 (6th Cir. 2002).

Defendants argue that Plaintiff is not entitled to injunctive relief because Plaintiff has not identified any contractual or tort injury, much less one that is a continuing or irreparable harm. Defendants additionally argue that, even if Plaintiff has identified such an injury, Plaintiff has not shown that a legal remedy is inadequate.  Indeed, in Plaintiff's brief in response to Defendants' motion for summary judgment, Plaintiff makes no effort to argue that a legal remedy is inadequate.  Plaintiff never indicates it will suffer an irreparable harm, apart from ongoing competition with PLS Indiana.  However, PLS Indiana is not a Defendant in this suit, and individual Defendants did not become involved with PLS Indiana until after the expiration of their CNTCs.

In this Court's opinion, Plaintiff has had an adequate remedy at law for addressing any breach of contract in bringing this suit.  Plaintiff's cited authority, *Rogers*, does not indicate otherwise.  In *Rogers*, the court found that the plaintiff had no adequate legal remedy where a trial court had erroneously found covenants not to compete unenforceable, and defendants had then formed a competing business.  Here, no such error has deprived Plaintiff of the benefit of its

13

contract. This litigation has provided a fair and efficient opportunity for Plaintiff to show injury as a result of Plaintiff's breach of contract and be appropriately compensated. As discussed above, Plaintiff failed to produce adequate evidence of damages. Furthermore, Plaintiff's request asking the Court to enforce the CNTCs going forward would create a burden on judicial resources that is not warranted by the circumstances of this case. Finally, even if Plaintiff had argued it lacks an adequate remedy at law, this Court does not believe that permanent injunctive relief is appropriate because Plaintiff has not established it will suffer irreparable harm.

For these reasons, this Court grants Defendants' motion for summary judgment with respect to Count V.

### 3. Declaratory Judgment

Defendants argue that they are entitled to summary judgment on Plaintiff's claim for declaratory judgment and their counterclaim for declaratory judgment. Both parties seek declaratory relief with respect to the enforceability of the CNTCs. Defendants previously filed a motion for partial summary judgment on this issue. (#49). This Court held that the contracts were facially valid. (#58). The Court did not reach the issue of whether the CNTCs were reasonable as applied to these Defendants under the circumstances, because discovery had not yet closed. Now, the 18-month term on each individual defendant's CNTC has expired.

Declaratory relief is appropriate where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 113, 127 (2007). When a claim for injunctive relief is barred but a claim for damages remains, a declaratory judgment as a predicate to a damages award can survive. *Crue v. Aiken*, 371 F.3d 668, 677 (7th Cir. 2007). Furthermore, the Declaratory Judgment Act gives the district court the discretion to declare the rights of the

litigants, but does not create a duty to grant such relief. *Med. Assur. Co, Inc. v. Hellman*, 610 F.3d 371, 377-78 (7th Cir. 2010) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)).[7]

Here, the CNTCs have expired, and so there is no purpose in determining the enforceability of the contracts with respect to these Defendants, other than to award damages or injunctive relief based on breach of the contract. This Court has already granted summary judgment to Defendants on Plaintiff's breach of contract claim in light of Plaintiff's insufficient proof of damages. The Court has also granted summary judgment to Defendants on Plaintiff's claim for permanent injunctive relief stemming from the contract. As such, the court declines to settle the parties' dispute regarding enforceability of the contract. Defendants' motion for summary judgment with respect to Count IV is denied, as the question of the enforceability of the CNTCs with respect to these Defendants is moot. Count IV is dismissed.

*4. Misappropriation of Trade Secrets*

Having addressed all of Defendants' arguments that pertain to Plaintiff's contract claims, the Court will now consider Defendants' arguments that pertain to Plaintiff's remaining tort claims.[8]

Defendants argue that the Court should grant summary judgment in its favor on Plaintiff's count for misappropriation of trade secrets because Plaintiff has failed to establish that the Modified D&B Reports constitute a "trade secret." Defendants' alleged misappropriation of the Modified D&B Reports is the only basis for Plaintiff's trade secrets claim. (#62, ¶ 129).

---

[7] *See also Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009) (stating the Declaratory Judgment Act is a procedural statute). Because the Act is procedural, this Court applies this statute, rather than state substantive law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[8] As discussed above, the Court analyzes these arguments under Illinois law, though the parties have briefed them under Ohio law.

A "trade secret" is statutorily defined as "information . . . that is sufficiently secret to derive economic value . . . from not being generally known to other persons . . . and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality."  765 ILCS 1065/2(d).  It is undisputed that some affirmative step must be taken by a plaintiff to maintain a trade secret.  *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *Gillis Assoc. Indus., Inc. v. Cari-All, Inc.*, 564 N.E.2d 882, 885-86 (Ill. App. Ct. 1990). The issue here is whether Plaintiff's affirmative steps to protect the secrecy of the Modified D&B Reports were "reasonable under the circumstances" to maintain the confidentiality of those reports.

Plaintiff took two main precautions to protect the secrecy of the Modified D&B Reports. First, it entrusted a specific employee to distribute the reports, via e-mail, to the appropriate sales manager.  (#62, ¶ 134).  In theory, a sales manager was supposed to receive D&B Reports that corresponded with his geographic sales territory, and no other territories.[9]  Second, Plaintiff had all employees that handled the Modified D&B Reports sign CNTCs that stated the employees agreed never to use or disclose Tradesmen's proprietary information. (#62-4, Exs. 11-13.)

On the other hand, Plaintiff failed to take certain precautions that Defendants argue were reasonable under the circumstances.  First, no one at Tradesmen informed Defendant Walker that the Modified D&B Reports were confidential or proprietary to Tradesmen.  (#62, ¶ 138). Second, the Modified D&B Reports were not protected by Tradesmen's PICK System, a computer system that required an employee login and password.  (#62, ¶ 140).  Plaintiff had no written policy relating to an employee's use of the Modified D&B Reports, no documented process for maintaining the secrecy of the reports, and the reports were never stamped or labeled "Confidential" prior to this litigation.  (#62, ¶¶ 141-43).

_____

[9]Defendants note that Plaintiff failed to follow even this precautionary measure on at least one occasion.  (#62, ¶¶ 135-37).

16

In *Arcor, Inc. v. Haas*, 842 N.E.2d 265, 270-71 (Ill. App. Ct. 2005), an Illinois appellate court summarizes several cases dealing with the issue of what steps are reasonable under the circumstances to maintain confidentiality of trade secrets. It is not sufficient for an employer to rely solely on confidentiality agreements with employees to maintain confidentiality of trade secrets. *Id.* Similarly, where an employer sent electronic copies of customer information to employees on a need-to-know basis, but took no other steps to protect the information (including no confidentiality agreement with employees), the employer's steps were not sufficient to maintain the confidentiality of the information. *Id.* (citing *Liebert Corp. v. Mazur*, 827 N.E.2d 909, 924-25 (Ill. App. Ct. 2005)). However, if an employer takes both of these precautions in combination, Illinois courts have found that these steps are reasonable under the circumstances to protect a trade secret. *Id.* (citing *Multiut Corp. v. Draiman*, 834 N.E.2d 43, 50 (Ill. App. Ct. 2005) (holding that the trial court's ruling in this respect was not against the manifest weight of the evidence)).

This discussion illustrates that Plaintiff's relatively limited efforts to ensure the secrecy of their Modified D&B Reports makes this a close call. Nevertheless, Plaintiff did limit the distribution of the Modified D&B Reports and required employees to sign confidentiality agreements. Similar steps were found sufficient in *Draiman*, 834 N.E.2d at 50. For the remainder of this discussion, the Court will assume without deciding that the Modified D&B Reports constituted a trade secret.

However, even assuming that the Modified D&B Reports are a trade secret, parties agree that Defendant Boyer knew nothing about the misappropriated Modified D&B Reports until this litigation began, and Defendant Black's only alleged involvement was to tell Defendant Walker to delete reports. (#62, ¶¶ 146-47; #66, ¶ 146). Defendants' motion for summary judgment with respect to Count II is therefore granted with respect to Defendant Boyer and Defendant Black.

Furthermore, as the Court noted previously, Plaintiff has not offered sufficient evidence of actual damages, and so its remedy is limited to a reasonable royalty for the misappropriator's unauthorized use or disclosure of the trade secret. 765 ILCS 1065/4(a). Here, because

Defendants deleted the misappropriated Modified D&B Reports within weeks of misappropriating them, and Plaintiff submits no evidence that Defendants profited from their misappropriation, the Court finds that there is no basis for awarding a royalty. (*See U.S. Gypsum Co v. LaFarge N. Am., Inc.*, 508 F.Supp.2d 601, 627 (N.D. Ill. 2007) (finding no basis for awarding a royalty where a defendant deleted misappropriated files within six weeks, and did not use or disclose the information in the files)).

The Court concludes that, even if Defendants misappropriated a trade secret, there is no basis for an award to Plaintiff. As such, the Court grants Defendants' motion for summary judgment with respect to Count II with respect to Defendant Walker and Defendant PLS.

*5. Misappropriation of Confidential Information*

Plaintiff brings a count for misappropriation of confidential information under Ohio Rev. Code § 1333.81. Defendants seek summary judgment for Plaintiff's Count III for misappropriation of confidential information on several theories, including lack of proof of damages and preemption.

The Court begins by noting that, although Plaintiff has alleged misappropriation of confidential information under an Ohio statute, the Court will analyze the claim under Illinois law. The factual basis for Plaintiff's misappropriation of confidential information claim is somewhat broader than its claim for misappropriation of trade secrets. In its response brief, Plaintiff notes that Defendants Boyer and Walker sent confidential information to their home e-mail and to Black while they were still employed by Tradesmen. The Court infers that Plaintiff refers to incidents where Defendant Walker e-mailed Defendant Black Tradesmen's workers' compensation rates, district manager compensation rates, and various marketing materials. (#66, ¶¶ 256-58). Defendants admit these facts, but argue they are immaterial because Plaintiff has not introduced any evidence showing such information is proprietary or confidential to Tradesmen.

Defendants argue that Plaintiff's claim for misappropriation of confidential information is preempted by the Trade Secrets Act. Among states that have adopted the Uniform Trade

Secrets Act, courts have come to different conclusions regarding the preemptive effect of the statute, specifically whether the statute displaces the tort of misappropriation of confidential information. *See Burbank Grease Srvcs., LLC v. Sokolowski*, 717 N.W.3d 781 (Wis. 2006) (discussing conclusions reached in various jurisdictions).

In applying Illinois law, the Seventh Circuit has noted the paucity of Illinois case law on the subject, and cautioned against reading ITSA's preemption clause too broadly. *Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404-05 (7th Cir. 2005) (stating "Illinois courts have had very little to say about the effect of [ITSA's preemption clause], perhaps because it is unimaginable that someone who steals property, business opportunities, and the labor of the firm's staff would get a free pass just because none of what he filched is a trade secret."). On the other hand, the Seventh Circuit has also stated, with respect to a claim for use of secret information, "Illinois has abolished all common law theories of misuse of such information . . . . Unless defendants misappropriated a (statutory) trade secret, they did no legal wrong." *Composite Marine Propellers, Inc v. Van der Woude*, 962 F.2d 1263 (7th Cir. 1992).

A recent Illinois case brings some clarity to the issue. In *Lawlor v. N. Am. Corp.*, 949 N.E.2d 155 (Ill. App. Ct. 2011), a company brought suit against a former employee for providing confidential information to a competitor while still employed with the company. This information included sales and profit information. However, rather than casting the claim as one for misappropriation of confidential information, the claim was brought for breach of confidentiality, and analyzed as a claim for breach of a fiduciary duty. The court noted that "Illinois recognizes that an employee can be liable for a breach of fiduciary duty to her employer when she discloses confidential business information to a competitor while still employed with her employer." *Id.* at 172. The court further differentiated this type of claim from one for misappropriation for trade secrets: "While an enforceable restrictive covenant may protect material which does not constitute a trade secret, an employer's protection absent a restrictive covenant is narrower and extends only to trade secrets . . . or near-permanent customer relationships." *Id.* (citing *Cincinnati Tool Steel Co v. Breed*, 482 N.E.2d 170 (Ill. App. Ct. 1985)). As such, where there is no fiduciary relationship, an employer cannot recover for

19

misappropriation of confidential information that does not amount to a trade secret. Where there is a fiduciary relationship, arising from a restrictive covenant, an employer may be successful in a claim for disclosure of confidential information under a theory of breach of fiduciary duty, even if the information does not constitute a trade secret.

The facts of this case are largely analogous to the *Lawlor* case. As in *Lawlor*, individual defendants transmitted information that did not rise to the level of a trade secret to a future employer while still employed by Plaintiff. As such, under the facts of this case, it is unnecessary for this Court to determine whether misappropriation of confidential information is still a cognizable claim in Illinois. Here, the facts underlying Plaintiff's claim for misappropriation of confidential information give rise to a fiduciary claim, as the same factual scenario was framed in *Lawlor*. This is especially appropriate in light of the Court's earlier finding that Plaintiff cannot establish consequential damages, and is only left with its damages claim for salary forfeiture.

Therefore, the Court grants Defendants' request for summary judgment with respect to Count III. The Court will further consider the factual issues underlying Count III in its discussion of Count VI.

*6. Breach of Duty of Loyalty*

Plaintiff brings a claim for breach of duty of loyalty, alleging that the individual Defendants, while still employed by Plaintiff, competed with Plaintiff, diverted business opportunities, and solicited customers away from Plaintiff. Additionally, as discussed above, Plaintiff alleges that individual Defendants breached their duty of loyalty by misappropriating trade secrets and confidential business information. Defendants respond that they did not compete while still employed by Plaintiff, but only prepared to compete, which is not a breach of any fiduciary duty. Defendants additionally argue that Plaintiff has not offered adequate proof of damages. Plaintiff seeks forfeiture of Defendants' salary and benefits for the time they competed with Plaintiff.

To state a cause of action for breach of fiduciary duty, a plaintiff must allege and ultimately prove (1) a fiduciary duty on the part of the [employee], (2) a breach of that duty, (3) an injury, and (4) a proximate cause between the breach and the injury. *Lawlor v. N. Am. Corp. of Illinois*, 949 N.E.2d 155, 172 (Ill. App. Ct. 2011) (quoting *Alpha Sch. Bus Co. v. Wagner*, 910 N.E.2d 1134 (Ill. App. Ct. 2009)).

With respect to breach, an employee who attempts to solicit an employer's customers for a competing entity can be in breach of a duty of loyalty to the employer. *Lawlor v. N. Am. Corp. of Illinois*, 949 N.E.2d 155, 172 (Ill. App. Ct. 2011). Additionally, an employee can be liable for breach of fiduciary duty to his employer when he discloses confidential business information to a competitor while still employed by her employer. *Id.* However, an employee may legitimately go so far as to form a rival corporation and outfit it for business while still employed by the prospective competitor. *Cross Woods Prods., Inc. v. Suter*, 422 N.E.2d 952, 957 (Ill. App. Ct. 1981).

With respect to injury and proximate cause, a plaintiff must show that a defendant's breach was a substantial factor leading to an injury. *FDIC v. Bierman*, 2 F.3d 1424, 1434 (7th Cir. 1993). There must be a direct relation between the injurious conduct and the injury asserted. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (discussing common law proximate cause).

If a plaintiff establishes all the elements of a claim for breach of fiduciary duty, it may seek complete forfeiture of any salary paid by the corporation to its fiduciary during a time when the fiduciary was breaching his duty to the corporation. *Levy v. Markal Sales Corp.*, 643 N.E.2d 1206, 1219 (Ill. App. Ct. 1994). Forfeiture is limited to the time of the wrongdoing. *Gross v. Town of Cicero*, 619 F.3d 697, 712 (7th Cir. 2010).

Here, with respect to breach, the Court agrees with Defendants' argument that there is no evidence that Defendants breached a duty of loyalty by competing with Plaintiff while still

employed by Plaintiff. Defendants did not begin operating their competing business until March 2010, several months after they left employment at Tradesmen. (#62, p. 11, ¶¶ 70-72 (undisputed facts)). However, Defendants Boyer and Walker each sent various e-mails with Plaintiff's confidential business information to themselves and to Defendant Black while still employed by Plaintiff. (#66, ¶¶256-58). These documents included information regarding workers' compensation rates, district manager compensation rates, and marketing materials. This constitutes a breach of their fiduciary duty as employees. *Lawlor*, 949 N.E.2d at 172.

However, Plaintiff has failed to advance any argument establishing that Defendants' breach proximately caused an injury. Plaintiff has a burden to show that Defendants' injurious conduct, namely Defendants' use of confidential information, was a substantial factor contributing to an economic injury to Plaintiff, such as loss of business. The Court acknowledges that it is possible that Defendants' breach did cause an injury, given the circumstances of this case; but, Plaintiff has simply failed to offer argument or evidence establishing these essential elements of a claim for breach of duty of loyalty.

Because this Court finds that Plaintiff has failed to satisfy its burden to prove that it suffered an injury proximately caused by Plaintiff's breach of fiduciary duty, the Court grants Defendants' motion for summary judgment with respect to Count VI.

*7. Civil Conspiracy*

To succeed in a claim of civil conspiracy under Illinois law, the plaintiff must establish at least one tortious act by one of the alleged co-conspirators in furtherance of the agreement that caused an injury to plaintiff. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). Plaintiff has not established tort liability for any of the Defendants for any count. As such, this Court grants Defendants' motion for summary judgment with respect to Count X.

## IV.  Summary

For the reasons discussed above, this Court hereby **GRANTS** Defendants' Motion for Summary Judgment **(#62)** in part and **DENIES** the motion in part.  The Court grants Defendants' motion for summary judgment with respect to all counts, with the exception of Count IV. Count IV is dismissed as moot.  The Clerk of the Court is directed to enter judgment in favor of the moving Defendants and against Plaintiff on Plaintiff's Complaint.  Defendant's Motion to Deem Certain Facts Admitted **(#79)** is denied as **MOOT**.

ENTER this 7th day of November, 2011.

_____ s/ DAVID G. BERNTHAL _____
U.S. MAGISTRATE JUDGE